Laurent S. Drogin (LD-4770)
Maxwell D. Rosenthal (MR-1174)
**TARTER KRINSKY &DROGIN LLP**
*Attorneys for Defendants*
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000 - Telephone
(212) 216-8001 - Facsimile
*LDrogin@tarterkrinsky.com*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CESAR ALMANZAR, FELIX CORPORAN,
JUAN DE LA CRUZ, JUANERIS DE LA CRUZ
JUAN DIAZ, JORGE DONE, VALENTIN MENALDO,
JUAN OGANDO, MARCUS REYES, and
WILSON ROSIS, individually, and on behalf           Civil Action
of all others similarly situated, and as Class        No. 14-CV-1810 (SHS)
Representatives,

        Plaintiffs,

    -against-

C & I ASSOCIATES, INC.,
C & I TELECOMMUNICATIONS, INC.,
WILLIAM GIANNINI, NELSON IZQUIERDO, and
ANDROKE POLONIO,

        Defendants.
------------------------------------------------------------------------X

### DEFENDANT WILLIAM GIANNINI'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY.................................................................................................2

STATEMENT OF UNDISPUTED MATERIAL FACTS ...............................................3

ARGUMENT.....................................................................................................................10

    I. GIANNINI IS NOT AN EMPLOYER UNDER THE FAIR LABOR
      STANDARDS ACT, THE NEW YORK STATE LABOR LAW, OR THE
      NEW JERSEY STATE WAGE AND HOUR LAW .......................................10

          A.   SUMMARY JUDGMENT STANDARD ...........................................10

          B.   LEGAL STANDARD FOR ESTABLISHING INDIVIDUAL
               "EMPLOYER" LIABILITY ..............................................................11

          C.   THE *CARTER* ECONOMIC REALITY TEST WEIGHS HEAVILY
               AGAINST FINDING GIANNINI INDIVIDUALLY LIABLE ........................12

          D.   DECISIONAL LAW CITED IN *IRIZARRY* ESTABLISHES THAT
               GIANNINI LACKS SUFFICIENT OPERATIONAL CONTROL OVER
               THE COMPANIES TO WARRANT IMPOSING FLSA INDIVIDUAL
               LIABILITY ......................................................................................15

CONCLUSION ..................................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baystate Alt. Staffing, Inc. v. Herman*,
    163 F.3d 668 (1st Cir. 1998) ....................................................................................11

*Carter v. Dutchess Community College*,
    735 F.2d 8 (2d Cir. 1984) ..................................................................12, 13, 14, 15

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    788 F.Supp.2d 253 (S.D.N.Y. 2011) (Holwell, J.) ................................................13

*Dole v. Elliot Travel & Tours, Inc.*,
    942 F.2d 962 (6th Cir. 1991) ...................................................................................17

*Donovan v. Agnew*,
    712 F.2d 1509 (1st Cir. 1983)...................................................................................17

*Donovan v. Sabine Irrigation Co.*,
    695 F.2d 190 (5th Cir. 1983) ...................................................................................17

*Gray v. Powers*,
    673 F.3d 352 (5th Cir. 2012) ...................................................................................18

*Gross v. National Broadcasting Co., Inc.*,
    232 F.Supp.2d 58 (S.D.N.Y. 2002).........................................................................10

*Herman v. RSR Sec. Services Ltd.*,
    172 F.3d 132 (2d Cir. 1999).....................................................................11, 16, 17

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013)............................................................................ *passim*

*Mendez v. Pizza on Stone*,
    No.11 Civ. 6316(DLC), 2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012) (Cote, J.)....................13

*Patel v. Wargo*,
    803 F.2d 632 (11th Cir. 1986) .................................................................................18

*Reich v. Circle C Investments, Inc.*,
    998 F.2d 324 (5th Cir. 1993) ...................................................................................17

*Samuels v. Mockry,*
  77 F.3d 34 (2d Cir. 1996) ....................................................................................10

*SCR Joint Venture L.P. v. Warshawsky,*
  559 F.3d 133 (2d Cir. 2009)................................................................................10

*Wirtz v. Pure Ice Co.,*
  322 F.2d 259 (8th Cir. 1963) .........................................................................14, 18

**Statutes**

29 U.S.C. § 203(d) ...................................................................................................11

## PRELIMINARY STATEMENT

Defendant William Giannini ("Giannini"), by his attorneys, submits this Memorandum of Law, together with: (a) Giannini's Rule 56.1 Statement (the "56.1 Statement"); (b) the April 3, 2015 Affidavit of Nelson Izquierdo with its exhibit; (c) the April 3, 2015 Affirmation of Maria Giannini; and (d) the April 3, 2015 Affirmation of Maxwell D. Rosenthal ("Rosenthal Aff.") with its exhibits, in support of his Motion for Summary Judgment seeking his dismissal from this lawsuit.

This is a wage and hour lawsuit brought against two cable installation companies, C&I Associates, Inc. ("Associates") and C&I Telecommunications, Inc. ("Telecom") (collectively the "Companies"). Giannini, who owns both Companies, is named as a defendant. So, too, are Nelson Izquierdo ("Izquierdo"), the General Manager of Associates, and Androke Polonio ("Polonio"), the Manager of Associates. Associates operates in New York. (56.1 Statement ¶ 91.) Telecom operated separately in New Jersey and was managed separately by Maria Giannini ("Maria"). (Id. ¶¶ 104-105.) Telecom recently ceased operations. (Id. ¶ 114.)

From the inception of the lawsuit Giannini has maintained that he is not a proper party defendant because he is not an "employer" within the meaning of the federal and state laws under which this lawsuit has been brought. After eight months of extensive discovery the evidentiary record continues to support his position. The evidence is so overwhelming that it calls into question whether Plaintiffs' counsel conducted the required investigation prior to filing these claims and their good faith in pursuing them.

Plaintiffs are ten cable repair and installation technicians ("Techs"). They visit customers' homes to install and/or service cable, internet, telephone equipment and wiring. Although the timeframe of this lawsuit spans six years, only two plaintiffs ever worked for

Telecom, for a combined 12 weeks. (Id. ¶¶ 16-17.) These two plaintiffs plus the other eight named plaintiffs all worked for Associates. (Id. ¶¶ 9-18.)

Techs were paid on a "piece rate" basis. (Id. ¶¶ 7, 108.) The central issues in the case are whether Techs were entitled to overtime pay and compensation for "waiting" time pursuant to the Fair Labor Standards Act ("FLSA"), the New York State Labor Law ("NYLL") and the New Jersey State Wage and Hour Law ("NJWHL.") Defendants maintain that the Techs were exempt from the overtime requirements of these laws and, therefore, they are not entitled to any additional compensation. (Rosenthal Aff. Ex. A; Third Affirmative Defense.)

## PROCEDURAL HISTORY

This action was filed on March 14, 2014 and a First Amended Complaint was filed on May 22, 2014. (Docket Doc. Nos. 2 and 25.) On July 25 Giannini moved for a judgment on the pleadings seeking dismissal from the lawsuit because the First Amended Complaint alleged only that he was the "Chief Executive Officer" of the Companies and contained no other factual allegations about him. (Docket Doc. Nos. 33-35.)

On August 14 oral argument was held, during which Plaintiffs' counsel made the following representations to the Court as to what the Plaintiffs could add to their pleadings:

> "[Plaintiffs] can give specific allegations of how often [Giannini] was [in the warehouse], and the fact that he was able to see the work that was going on…." Giannini was "present in the workplaces," and the workers observed "[Giannini's] overseeing the work personally on the warehouse floor."

(Docket Doc. No. 44, Pgs. 19: 19 – 23; 20: 20 – 21; 23: 6 – 13.) (Emphasis added).

Also presented was a paycheck with an electronic signature which, it was argued, was evidence that Giannini signed Techs' payroll checks. (Rosenthal Aff. Ex. B; Docket Doc. No. 44, Pgs. 11: 18 – 12: 5.). Last, a document entitled "Notice and Acknowledgment of Pay Rate and

Payday" (the "WTPA Notice") was produced with the representation from Plaintiffs' counsel that it was "provided to [her] clients by defendants' employees." (Rosenthal Aff. Ex. C; Docket Doc. No. 44, Pgs. 13: 7-20.)[1]

After considering these representations and taking a break to review the applicable case law the Court granted Giannini's motion but afforded Plaintiffs the opportunity to replead.

On August 21 Plaintiffs filed their Second Amended Complaint adding only four allegations relating to Giannini. (Docket Doc. No. 42, ¶¶ 32 – 35.) While these new allegations were pled in vague and conclusory fashion and incorrectly lumped both Companies together as one, Giannini elected not to renew his motion and, instead, decided to proceed with discovery.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

There have been eight months of fact discovery in this case. Giannini, Izquierdo, Polonio, Maria, and all ten Plaintiffs were deposed. Defendants also served Requests to Admit pursuant to Federal Rule 36. (Rosenthal Aff. Ex. D.) Much of the testimony that might otherwise be quoted or summarized in this motion has been rendered unnecessary based on the Plaintiffs' Rule 36 admissions. The table below reflects what Plaintiffs admit Giannini did not do, and those facts they deny, relating to the Companies.

| Giannini **DID NOT** | Associates | Telecom |
|---|---|---|
| Maintain employment records | ADMIT | ADMIT |
| Discipline employees | ADMIT | ADMIT |
| Hire employees | ADMIT | ADMIT |
| Terminate employees | ADMIT | ADMIT |
| Determine employees employee work schedules | ADMIT | ADMIT |
| Determine rate of pay | DENY | ADMIT |
| Determine manner of payment | DENY | ADMIT |

---

[1] Eight of the ten named plaintiffs testified that they had never seen the WTPA Notice (56.1 Statement ¶¶ 153 – 162) and Second Amended Complaint seeks damages on the ground that such notices were not given to employees. (Docket Doc. No. 42, at pg. 39.)

(<u>Rosenthal Aff</u>. Ex. F ¶¶ 5 - 18.)[2]  These admissions came after it became painfully obvious that the Plaintiffs knew far less than their counsel had represented to the Court.

In addition, <u>all ten Plaintiffs</u> testified at their depositions that:

➢ <u>None</u> knew what Giannini did for the Companies; (<u>56.1 Statement</u> ¶¶ 19 - 28)

➢ They only saw him in the morning when he walked to his office (at Associates, not Telecom), which is separate from the warehouse where they receive and return equipment; (<u>Id.</u> ¶¶ 29 - 38)

➢ Since 2006 <u>not one Plaintiff</u> ever spoke to Giannini except, on rare occasion, to exchange greetings in the morning; (<u>Id.</u> ¶¶ 39 - 48)[3]

➢ <u>None</u> knew if Giannini ever made decisions regarding the rate and method of their compensation.  (<u>Id.</u> ¶¶ 49 – 58.)  (Despite this, Plaintiffs <u>denied</u> the Request to Admit these facts with respect to Associates); (<u>Rosenthal Aff.</u> Ex. F ¶¶ 7, 9) and

➢ <u>None</u> knew if Giannini supervised and/or controlled the terms or conditions of their employment.  (<u>Rule 56.1 Statement</u> ¶¶ 59 - 68.)


<u>**Testimony from the Companies' Management**</u>

The testimony from Izquierdo, Polonio, Maria and Giannini provide additional undisputed facts with respect to the Companies' operations and Giannini's lack of involvement.

---

[2]    Plaintiffs' original Responses to Defendants' Request to Admit were served on January 23, 2015 but were incomplete. (<u>Rosenthal Aff</u>. Ex. E.)  Plaintiffs ultimately served their Amended Responses to Defendants Requests to Admit on March 27, 2015. (<u>Id.</u> Ex. F.)

[3]    All but one plaintiff needed a Spanish interpreter at their depositions because they spoke little or no English.  Giannini does not speak Spanish. (<u>56.1 Statement</u> ¶ 118.)

### *Associates*

Izquierdo testified that, since 2009, he has been the General Manager of Associates and, in that capacity, he runs the entire company.  (Id. ¶ 92.)  Specifically, his responsibilities include, but are not limited to: (a) setting the rate that Techs are paid and the date and process by which they receive checks; (b) making changes to the amounts that Techs are paid; (c) handling all marketing and client development; (d) handling all correspondence with Associates' client; (e) dealing with all Tech relations including payment problems, missing equipment, formal and internal complaints, overseeing the hiring and firing of Techs; (f) seeking out and managing outside counsel to handle Tech complaints; (g) determining whether corrections to Tech payments need to be made; (h) dealing with internal operations, including handling lease issues, insurance issues, and vendor purchasing decisions; and (i) authorizing company expenses. (Id. ¶¶ 93 - 98.)

Izquierdo does not seek authority from or consult with Giannini when performing his responsibilities.  (Id. ¶ 100.)  He even has the power to shut Associates down. (Id. ¶ 99.)

Polonio testified that he is Associates' Manager and, in that capacity, he directly oversees the warehouse personnel, supervisors, and Techs.  (Id. ¶ 101.)  He hires, fires, disciplines, trains, responds to complaints and sets work schedules for Techs and does not seek permission or input from Giannini when performing any of these tasks.  (Id. ¶¶ 102 - 103.)

### *Telecom*

Maria testified that, as the Manager of Telecom, she hired, fired, disciplined, set schedules for Techs and handled their requests for days off.  (Id. ¶¶ 104, 106, 111.)  She also managed inventory, corresponded with Telecom's client, occasionally signed paychecks, and handled issues in the field. (Id. ¶¶ 106, 109 110.)

She also testified that Giannini was not involved in Telecom at all and she did not speak to him about Telecom. (Id. ¶¶ 112.) Giannini would stop by Telecom's facility in New Jersey about once a month for ten minutes to bring her mail and ask about family. (Id. ¶ 113.)

In November 2014, Maria decided <u>on her own</u> to shut down Telecom. (Id. ¶ 114.) She did not ask for Giannini's permission, or ask his opinion about her decision. (Id. ¶ 115.)


### TESTIMONY FROM GIANNINI

Giannini first joined Associates as an employee performing construction work. (Id. ¶ 119.) Construction work involves laying hard telecommunication cable wires in the hallways and exteriors of apartment buildings and does not involve performing work inside of residences. Construction work is different from cable installation work. (Id. ¶ 120.)

In July 2008, the then-owner of Associates sold 50% of the company to Giannini and the other 50% to another individual named Joseph Spain. (Id. ¶ 126.)[4] Around that time, Giannini became the 100% owner of Telecom. (Id. ¶ 127.) In June 2012, Giannini assumed Mr. Spain's 50% ownership and became the sole stockholder in Associates. (Id. ¶ 128.)

Giannini testified that, since 2008, he has kept an office at Associates' Bronx location, separate from the warehouse where the Techs report for work. (Id. ¶ 129.) During this time, he generally visited his office three days per week for approximately four hours each day. (Id. ¶

---

[4] Plaintiffs were asked about a document produced by Defendants called "Work Owners Agreement" and signed by Giannini in 2008 just before he became an owner of Associates. (Rosenthal Aff. Ex. FF) All Plaintiffs testified that they had no knowledge regarding this document. (Id. ¶ 125.) Testimony from Izquierdo and Giannini explained that this document was created by the Techs and Giannini was pressured into signing it and did so in order to prevent a strike. (Id. ¶¶ 121 - 122.) Giannini did not retain a copy of this document, has never performed any of the functions described therein, and had not seen this document again until this lawsuit. (Id. ¶¶ 123 - 124.)

130.)[5] Each day Giannini arrived at his office, the only company-related task that he would carry out was reviewing summary reports reflecting expenses and income. (Id. ¶ 134.) Other than that, Giannini might perform random tasks related to other business ventures. (Id. ¶ 135.) He also frequently slept and watched television in his office. (Id. ¶ 136.)

Giannini is the signatory on the Companies' bank accounts. (Id. ¶¶ 151.) His signature is placed electronically onto the Techs' payroll checks. (Id. ¶ 152.) The Companies' office staff has authority to write Giannini's initials on Techs' checks so the bank will honor changes. (Id. ¶ 150.)

Giannini testified that he did not perform any of the following duties for the Companies:

- Did not review employment records for Techs; (Id. ¶ 141)

- Did not mark up or draft employment records for Techs; (Id. ¶ 142)

- Did not participate in deciding how much Techs were paid; (Id. ¶ 144)

- Did not participate in deciding how Techs were paid; (Id. ¶ 143)

- Did not sign, write "void," or alter in any way Tech paychecks; (Id. ¶ 150) and

- Did not supervise Techs' work. (Id. ¶ 145.)

Because Plaintiffs all testified that they had no knowledge of what Giannini did for the Companies, these denials are **uncontested** material facts.

---

[5] Since 2008, there were significant periods of time when Giannini did not visit his office at all due to injuries and illness. (Id. ¶¶ 132 - 133.)

Plaintiffs presented <u>absolutely no evidence</u> of Giannini's involvement with, or presence at, Telecom.[6]  With respect to Associates, Plaintiffs attempt to cobble together vague memories and stray documents as evidence of Giannini's involvement.

-   <u>WTPA Notice:</u> Despite Plaintiffs' counsel's representations on August 14, only two of the ten plaintiffs testified that they had ever seen the WTPA Notice before the lawsuit began and both testified that: (a) they did not know who created it; (b) they did not know how they received it; (c) they never signed or returned it to management; and (d) management never followed up about it.  (<u>56.1 Statement</u> ¶¶ 145 - 152.)  The only two plaintiffs with any knowledge regarding the WTPA Notice could not link it in any way to Giannini. (<u>Id</u>.) The other eight plaintiffs had never seen the WTPA Notice before. (<u>Id.</u> ¶¶ 153 - 160.)[7]

-   <u>Paychecks:</u> Every plaintiff testified that he had never seen Giannini sign, initial, or do anything with a company check. (<u>Id.</u> ¶¶ 69-78.)[8]  Izquierdo confirmed that Tech payroll checks have a stenciled electronic version of Giannini's signature on them. (<u>Id.</u> ¶ 152.)

---

[6]    This reveals Plaintiffs' counsel's August 14 representation to the Court that Giannini was present at the "workplace**s**" could not be substantiated. (<u>Docket Doc.</u> No. 44, Pg. 20: 17 – 21.)

[7]    Izquierdo testified that an office worker wrote Giannini's name on the WTPA Notice in error and the rest of the information on the Notice (EIN, telephone numbers, and mailing address) all belonged to Associates, not Giannini. (<u>Id.</u> ¶¶ 161-162, 166-168.)  Izquierdo further testified that once he learned of this mistake he instructed those Techs who received the WTPA Notice to disregard the document.  (<u>Id.</u> ¶¶ 163-165.) Giannini testified that he had never seen the WTPA Notice before the lawsuit began.  (<u>Id.</u> ¶ 169.)

[8]    This testimony stands in stark contrast to both the representations made in Plaintiffs' memorandum of law in support of their motion to replead (<u>Docket Doc.</u> No. 38, Pg. 9 ("…documents provided to plaintiffs that demonstrate his involvement in payroll…") and Plaintiffs' counsel's representations to the Court on August 14 that Giannini was involved with the Companies' payroll.

- Warehouse Meeting: Four of the plaintiffs testified that they attended a meeting at Associates' Bronx warehouse during which a change in the pay policy was discussed. (56.1 Statement ¶¶ 170, 172, 174, 175.)[9]  All four testified that Giannini was present at this meeting but did not speak a word. (Id.)  The other six plaintiffs testified that they had no knowledge of any such meeting. (Id. ¶¶ 176-181.)[10]

- Polonio Meeting: Two of the plaintiffs testified that they attended a meeting where Giannini spoke with Techs about the potential termination of Polonio. (Id. ¶¶ 190, 192.)  Neither testified that they remembered when this meeting took place.  (Id. ¶¶ 192, 193.)  One testified that the meeting was conducted in English and he does not speak English, the other could not remember the language of the meeting.  (Id. ¶¶ 191, 193.)  Both testified that there was never another meeting where Giannini spoke with Techs.  (Id. ¶¶ 190, 192.)[11]

All of the deposition testimony and the Plaintiffs' own admissions establish that the allegations made against Giannini in the Second Amended Complaint cannot be substantiated and that Plaintiffs' counsel's representations to the Court were, put kindly, overstated.

---

[9]     One of these plaintiffs testified that the meeting took place in 2008/2009 (Id. ¶ 172) and another testified it took place around 2009/2010. (Id. ¶ 175.)  The other two plaintiffs could not remember when it took place. (Id. ¶¶ 170, 174.)

[10]     One plaintiff testified that he received a document entitled "Impact of Implementation of Hourly Wage/Overtime Policy on Employee Take Home Pay" ('Impact Notice") during this warehouse meeting.  (Id. ¶ 170; Rosenthal Aff. Ex. EE)  Another plaintiff testified that he received the Impact Notice, but not at any meeting.  (Id. ¶ 171.)  The other eight plaintiffs, including the two who testified about the warehouse meeting, testified that they had never seen this Impact Notice before. (Id. ¶¶ 182-189.)

[11]     It is likely that these plaintiffs misidentified Giannini completely.  One of the plaintiffs could not describe what Giannini looks like (Id. ¶ 173) and the other testified that Giannini is in his 50's and weighs about 200 pounds. (Id. ¶ 194.)   In reality, Giannini is 74 years old and weighs 160 pounds. (Id. ¶ 117.)

# ARGUMENT

## I

## GIANNINI IS NOT AN EMPLOYER UNDER THE FAIR LABOR STANDARDS ACT, THE NEW YORK STATE LABOR LAW, OR THE NEW JERSEY STATE WAGE AND HOUR LAW

### A. SUMMARY JUDGMENT STANDARD

"Summary judgment must be granted to the movant 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009) (citing Fed.R.Civ.P. 56(c) and quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

If the moving party meets this initial burden, then the non-moving party can only defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The non-moving party may not, however, 'rest upon…mere allegations or denials.'" *Gross v. National Broadcasting Co., Inc.*, 232 F.Supp.2d 58, 67 (S.D.N.Y. 2002) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000)). "'Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.'" *Gross*, 232 F.Supp.2d, at 67 (quoting *Bickerstaff v. Vassar Coil*, 196 F.3d 435, 452 (2d Cir. 1999)).

## B.  LEGAL STANDARD FOR ESTABLISHING INDIVIDUAL "EMPLOYER" LIABILITY

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("*RSR*").[12]

However, the Second Circuit in *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) established boundaries to this inquiry by rejecting any "'expansive application of the definition of 'employer'" that would impose liability upon any corporate officer/employee who simply exercised control over the "work situation." *Irizarry*, 722 F.3d, at 108 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)).  *Irizarry* held that an individual must make decisions that "directly affect the nature and conditions of the employees' employment" to be an FLSA "employer." *Irizarry,* 722 F.3d, at 110.

Thus, an individual is not an "employer" solely because he owns a business.  *Id.*, at 109.  More is required.  An individual must also possess "operational control" over the business to such extent that he demonstrates a "personal responsibility for making decisions about the conduct of the business that contributed to violations of the [FLSA]." *Id.*, at 108-109 (citing and quoting *Baystate,* 163 F.3d, at 678).  It is operational control, not ownership, that dictates whether an individual is an "employer."[13]

---

[12]  The parties agree that the same standard for FLSA employer liability applies to employer liability under the NYLL and the NJWHL.

[13]  The Court recognized this and stated so to Plaintiffs' counsel at the August 14 oral argument. (<u>Docket Doc</u>. No. 44, Pgs. 3: 25 – 4:6. ("The operational control is whether or not he had control in a manner that relates to the plaintiff's employment.  That's important.  As the

As "operational control" is not a self-defining term, the Second Circuit has explained:

> Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment. It is appropriate…to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation – even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." (internal citations omitted)

*Irizarry*, at 109. (emphasis added.)

For guidance on whether an individual's actions "rise to this level," *Irizarry* instructs courts to consider: (1) the responsibilities enumerated in the four-factor economic reality test in *Carter v. Dutchess Community College*; (2) the analyses contained in a group of decisions examined in *Irizarry*; and (3) the totality of the circumstances. *Id.*, at 110.

Each of these three sources of guidance dictates that Giannini falls far short of qualifying as an employer.

## C. THE *CARTER* ECONOMIC REALITY TEST WEIGHS HEAVILY AGAINST FINDING GIANNINI INDIVIDUALLY LIABLE

*Irizarry* highlighted the "economic reality" test as a useful tool in determining whether an individual possesses "operational control" sufficient to be held liable as an employer. This test, established in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), sets forth the following four-factor analysis to assess whether an employer/employee relationship exists: Whether the individual (1) has the power to hire and fire the employees; (2) supervises and controls employee work schedules or conditions of employment; (3) determines the rate and method of payment; and (4) maintains employment records. *Carter*, 735 F.2d, at 12.

CEO, presumably [Giannini] had control over everything, that that's not good enough for these purposes. There has to be control in a manner that relates to a plaintiff's employment.")

Prior to *Irizarry*, courts in the Southern District applied the *Carter* factors and declined to impose FLSA liability against business owners who had far more operational control than Giannini. *See, e.g., Mendez v. Pizza on Stone*, No.11 Civ. 6316(DLC), 2012 WL 3133522, at *2 (S.D.N.Y. Aug. 1, 2012) (Cote, J.) (pre-*Irizarry* decision applying *Carter* factors and granting summary judgment to individual defendants who provided assistance in the hiring process, communicated wage and hour policies to employees, and occasionally delegated authority to set employee work schedules); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 309-310 (S.D.N.Y. 2011) (Holwell, J.) (pre-*Irizarry* decision applying *Carter* factors and granting summary judgment to individual who was sole owner, made recommendations on hiring, physically visited the company once a week and received reports regarding the status of the business.)

The Defendants' Requests to Admit <u>intentionally mirrored</u> the *Carter* factors. In response, Plaintiffs admitted that Giannini did not <u>hire</u>, <u>fire</u>, <u>discipline</u>, <u>set work schedules</u>, or <u>maintain employment records</u> for either Companies. (*See supra*, at 3.) In addition, with respect to Telecom, Plaintiffs admitted that Giannini did not determine the rate or method of Tech compensation. (*Id.*) These admissions alone strongly suggest that no employer/employee relationship exists between Giannini and Plaintiffs.

In addition to their admissions, the Plaintiffs' deposition testimony, along with that of the Companies' management team, and Giannini, tips the scale completely against finding Giannini to be an employer.

1. <u>**The Power to Hire and Fire Employees**</u>

Giannini is an owner of the Companies and could theoretically hire or fire a Tech. (*See supra*, at 1.) However, Giannini has never actually done either, a fact that all Plaintiffs admit.

(*See supra*, at 3.)  Izquierdo, Polonio, and Maria hire and fire Techs without consulting Giannini. (*See supra*, at 5-6.)[14]  With respect to Telecom, Maria terminated the employment of all Techs when <u>she</u> closed the company down.  (*See supra*, at 6.)

This factor weighs against finding Giannini to be an employer.

**2.    Supervised and Controlled Employee Work Schedules or Conditions of Employment**

No Plaintiff knows whether Giannini supervised or controlled the terms or conditions of employment for Techs.  (*See supra*, at 4.)  Giannini testified that he did not supervise, train, discipline or interact with Techs in any way. (*See supra,* 7; <u>56.1 Statement</u> ¶ 145.)  These duties are performed by Izquierdo, Polonio and Maria without consulting Giannini. (*See supra*, at 5-6.)

Further, Plaintiffs admit that Giannini does not set Tech work schedules (*See supra*, at 3) which aligns with Giannini's testimony. (<u>56.1 Statement</u> ¶ 137.)  Polonio and Maria set Tech schedules for Associates and Telecom, respectively. (*See supra*, at 5-6.)  They do so without consulting Giannini.  (*Id.*)

This factor weighs against finding Giannini to be an employer.

**3.    Determined Rate and Method of Compensation**

Although they declined to admit this *Carter* factor with respect to Associates, no Plaintiffs testified having any knowledge of Giannini making decisions regarding how or how much Techs are compensated.  (*See supra*, at 4.)  Plaintiffs do admit this *Carter* factor with respect to Telecom.  (*See supra*, at 3.)  Giannini testified that he does not determine the rate or

---

[14]    The Second Circuit has not yet decided whether unexercised authority is sufficient to establish FLSA individual liability.  *Irizarry*, 722 F.3d, at 111 (declining to answer the question "in light of the evidence of the authority [the individual defendant] *did* exercise.")  However, considering that so many other *Carter* factors and *Irizarry* weigh against holding Giannini liable, this is not an appropriate "test case" because it would <u>not</u> likely be outcome determinative here. *See infra, Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262 (8th Cir. 1963) (no individual liability where only theoretical authority existed)

method of compensation for Techs.  *See supra*, at 7.  Izquierdo makes these decisions without consulting Giannini.  *See supra*, at 5.

This factor weighs against finding Giannini to be an employer.

**4.    Maintain Employment Records**

Plaintiffs admit that Giannini does not maintain employment records for the Companies. *See supra*, at 3.

This factor weighs against finding Giannini to be an employer.

Applying the *Carter* factors leads to the conclusion that the economic reality is that Giannini is not an FLSA employer.

**D.    DECISIONAL LAW CITED IN *IRIZARRY* ESTABLISHES THAT GIANNINI LACKS SUFFICIENT OPERATIONAL CONTROL OVER THE COMPANIES TO WARRANT IMPOSING FLSA INDIVIDUAL LIABILITY**

In addition to the economic reality test, *Irizarry* relied upon several decisions that considered an individual's "operational control" when determining employer status.  *Irizarry*, 722 F.3d, at 106–110.  The *Irizarry* court then noted that, while this determination must be made on a case-by-case basis, the analyses from those decisions provide guidance in determining whether an individual's actions "rise to this level." *Id.*, at 110.

While some of the decisions cited by *Irizarry* imposed individual liability and others did not, the analyses from all of these decisions should guide this Court to conclude that Giannini is not an FLSA employer.

First and foremost, *Irizzary* illustrates why Giannini is not an FLSA employer.  That case involved the owner of Gristede's Supermarkets, John Catsimatidis, who exercised vastly more operational control than Giannini.  Specifically, Catsimatidis:

-    possessed broad control over the company's corporate strategy (**Giannini did not**);

- "studied in depth" various company-wide and individual-store reports containing information on profits/losses, sales/purchases, and gross margins and used these reports to make "the ultimate decisions as to how the company is run" (**Giannini would only look at bank account statements online**);

- was available to handle problems with buildings, government agencies and vendors (**Giannini was not generally available and had no such interactions**);

- physically visited the stores to assess their operations and address problems (**Giannini visited but seemingly did not work);**

- kept track of payroll, had his signature on paychecks, and acknowledged that employees might complain to him during a visit to their store (**Giannini did none of these things except to have his electronic signature on paychecks**);

- had direct interaction with store managers about their performance and operations (**Giannini had little to no interaction as managers ran both Companies with limitless autonomy**);

- received, reviewed and forwarded customer complaints to employees who he deemed responsible (**Giannini played no role in this**); and

- implemented a "reset" to a particular store which involved making large and small changes to its operations and merchandising (**Giannini implemented no such policies**).

*Irizarry,* F.3d, at 107, 111-114. After considering all these facts, while the *Irizarry* court did impose individual liability against Catsimatidis, it still called it a "close case." *Id.*, at 116-117. If *Irizarry* was a "close call," Giannini is safe by a mile.

*Irizarry* relied heavily upon the Second Circuit's decision in *RSR*, 172 F. 3d 132 (2d Cir. 1999) which found individual liability against another owner who was heavily involved in the day-to-day operations of his company, including:

- instructing managers to stop classifying security guards as independent contractors;

- reviewing periodic reports containing information regarding work orders, investigation reports, invoices, and weekly timesheets;

- possessing actual knowledge of "improprieties regarding the compensation of [the plaintiff-security guards]";

- receiving complaints from clients regarding work performance of security guards;

- referring individuals to be hired as security guards;

- assigning security guards to cover specific clients;

- setting the rates the clients were charged for security guard services;

- instructing managers regarding security guard operations;

- forwarding security guard complaints to managers; and

- receiving payments directly from clients for security guard services.

172 F. 3d, at 135-138. Giannini had no involvement in <u>any</u> of these types of activities. The *RSR* court held that the level and nature of the owner's involvement with the plaintiffs' employment constituted operational control sufficient to impose FLSA liability. *RSR*, 172 F.3d, at 140-41 ("[The individual defendant] was, of course, not only a 50 percent owner; he had direct involvement with [the plaintiffs] from time to time and was generally involved with all of [the company's] operations.") *RSR* and *Irrizary* both followed a line of cases that also contain facts highly-distinguishable from those presented here.[15]

Giannini's involvement does not resemble that of the individual defendants in *Irizarry, RSR, Sabine, Dole, Agnew* and *Reich.* Rather, his involvement with the Companies (or lack

---

[15] *See Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 195 (5th Cir. 1983) (finding FLSA liability against individual who controlled "the conduct of [the company's] business, including all significant phases of its relationship with the [plaintiff-employees].") ; *Dole v. Elliot Travel & Tours, Inc.* 942 F.2d 962, 966 (6th Cir. 1991) (finding FLSA liability against individual who "had control over significant aspects of the corporation's day-to-day functions and admitted to making all major corporate decisions and determining employee salaries); *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (finding liability against individuals who were "actively engaged in management, supervision and oversight of [the company's] affairs, including employee compensation and benefits."); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (finding liability against individual defendant who controlled the company's "work situation" by hiring employees, giving instructions to employees on how to perform their work, ordered an employee to refrain from keeping records of tips, and spoke on behalf of the company during a government investigation of potential FLSA violations.)

thereof) is far more aligned with the other line of cases cited and expressly endorsed by *Irizarry* where the individual was found not to be an employer.

For instance, in *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262-63 (8th Cir. 1963), the Eighth Circuit declined to impose FLSA liability despite the individual defendant being the company's "controlling stockholder and dominating figure." *Wirtz* held that even though the owner "could have taken over and supervised the relationship between the corporation and its employees…a careful reading of the record, however, indicates that he did not do so." *Id.*, at 262. Instead, he left the matter of FLSA compliance to his managers and "had nothing to do with the hiring of the employees or fixing their wages or hours." *Id.* This is precisely what Giannini has done and, like *Wirtz*, no FLSA individual liability should be imposed.

Applying this same rationale from *Wirtz*, *Irizarry* examined two additional appellate court decisions that, when applied here, also demonstrate that Giannini is not an employer. *See Gray v. Powers*, 673 F.3d 352 (5th Cir. 2012) (declining to impose FLSA individual liability against an owner of a bar who hired management, had the power to fire the plaintiff-bartender, was a signatory on the company checking account, occasionally signed paychecks, and asked bartenders how much they made in tips.); *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (declining to impose individual liability against individual who was principal stockholder, president, vice president and director because he did not have operational control of "significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters related to an employee.")

By applying *Irizarry* and the cases it found persuasive, together with the undisputed facts of this case in their totality, the Court should conclude that Giannini is not an employer as defined under the FLSA, NYLL or NJWHL and his motion should be granted.

## CONCLUSION

The Court has been misled. The initial complaint and its first amendment were most accurate. They both contained no factual allegations ascribing any operational control to Giannini.

On August 14, 2014, representations were made to the Court by Plaintiffs' counsel and the Court relied on them when the request to replead was granted. None of the oral representations made to the Court were accurate. Nor were the allegations made in the Second Amended Complaint. This became obvious during the depositions of the Plaintiffs. Giannini, through discovery conducted the investigation that should have been made by Plaintiffs' counsel before filing their three pleadings. Faced with this evidence, and then the testimony of Giannini, Izquierdo, Polonio and Maria, Plaintiffs inexcusably refused to drop Giannini from the lawsuit. They remained undaunted even in the face of Requests to Admit that dissolve the foundation of their espoused theory. The result of months of discovery and expense of time, effort and money brings us to this motion, which should have never become necessary.

The Court should grant this motion and exercise its discretion and inherent authority as to whether further remedies and relief should be awarded.

Respectfully submitted,
**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*


By: _____s/Laurent S. Drogin_____
      Laurent S. Drogin
      Maxwell D. Rosenthal
      1350 Broadway, 11th Floor
      New York, NY 10018
      Tel: (212) 216-8000
      Fax: (212) 216-8001
      LDrogin@tarterkrinsky.com