UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CESAR ALMANZAR, FELIX CORPORAN, :
JUAN DE LA CRUZ, JUANERIS DE LA CRUZ, :    14 Civ. 1810 (SHS)
JUAN DIAZ, JORGE DONE, :
VALENTIN MENALDO, JUAN OGANDO, :
MARCUS REYES, and WILSON ROSSIS, :
individually, on behalf of all others similarly :
situated, and as Class Representatives, :
                                         :
                Plaintiffs, :
                                         :
        - against -
                  :
C & I ASSOCIATES, INC., :
C & I TELECOMMUNICATIONS, INC., :
WILLIAM GIANNINI, NELSON IZQUIERDO, :
and ANDROKE POLONIO, :
                                         :
            Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AS TO LIABILITY**

---

Attorneys for Plaintiffs:

MFY LEGAL SERVICES, INC.

Maia Goodell,
David Ureña, of counsel to
Jeanette Zelhof, Esq.
299 Broadway, 4th Floor
New York, New York 10007
(212) 417-3700

LEVY DAVIS & MAHER, LLP

Jonathan A. Bernstein
39 Broadway, Suite 1620
New York, NY 10006
(212) 371-0033

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 6

I.            Defendants Unlawfully Failed to Pay Plaintiffs Overtime................................... 6

      A.    FLSA .................................................................................................. 6

      B.    State Law ......................................................................................... 10

II.          Defendants Unlawfully Failed to Pay Plaintiffs Minimum Wage for Waiting
Time             ................................................................................................................ 11

      A.    Plaintiffs' Waiting Time is Compensible Time................................. 11

      B.    FLSA ................................................................................................ 13

      C.    State Law ......................................................................................... 14

III.         Additional NYLL Violations: Notices and Deductions .................................... 15

IV.        Defendants Made No Good Faith Effort to Comply with, and Wilfully Violated
the Law          .......................................................................................................... 16

      A.    Good Faith ....................................................................................... 16

      B.    Willfulness....................................................................................... 17

      C.    Defendants' Liability for Additional Damages ............................... 18

V.          Defendants C & I Associates, C & I Telecommunications, Androke Polonio, and
Nelson Izquierdo were Plaintiffs' "Employers" Within the Meaning of the FLSA, NYLL, and
NJSWHL          .......................................................................................................... 19

      A.    Congress broadly defined "employ" to require FLSA compliance by entities

who "suffer or permit" others to work.................................................................... 19

      B.    Defendants are Employers Under Relevant Laws ........................... 20

i

CONCLUSION...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Mt. Clemens Pottery Co.*,

328 U.S. 680 (1946)..................................................................................................... 7

*Archie v. Grand Cent. P'ship, Inc.*,

997 F. Supp. 504 (S.D.N.Y. 1998) ............................................................................... 9

*Brennan v. Arnheim & Neely*,

410 U.S. 512 (1973)...................................................................................................... 9

*Brock v. Wilamowsky*,

833 F.2d 11 (2d Cir.1987)........................................................................................... 17

*Carter v. Ductchess Community College*,

735 F.2d 8 (2d Cir. 1984)............................................................................................ 21

*Caserta v. Home Lines Agency, Inc.*,

273 F.2d 943 (2d Cir.1959)........................................................................................... 6

*Chao v. Akron Insulation & Supply, Inc.*,

No. 5:04-CV-0443, 2005 WL 1075067(N.D. Ohio May 5, 2005), ................................... 11, 12

*Chao v. Gotham Registry, Inc.*,

514 F.3d 280 (2d Cir. 2008)...................................................................................... 9, 12

*Community for Creative Non-Violence v. Reid*,

490 U.S. 730 (1989).................................................................................................... 19

*Cromwell v. New York City Health & Hospitals Corp.*,

983 F. Supp. 2d 269 (S.D.N.Y. 2013)......................................................................... 14

*D'Arpa v. Runway Towing Corp.*,

No. 12-CV-1120, 2013 WL 3010810, at *4 (E.D.N.Y. June 18, 2013) ................. 9, 16, 18, 21

*Douglas v. Xerox Bus. Servs. LLC*,

No. C12-1798-JCC, 2014 WL 3396112 (W.D. Wash. July 10, 2014) .................................... 13

*Espenscheid v. DirectSat USA, LLC*,

705 F.3d 770 (7th Cir. 2013) ........................................................................................... 11, 13

*Hart v. Rick's Cabaret Int'l, Inc.*,

No. 09 CIV. 3043 PAE, 2014 WL 7183956 (S.D.N.Y. Dec. 17, 2014) .................................. 11

*Herman v. RSR Secs. Servs.*, Ltd.,

172 F.3d 132 (2d Cir. 1999) .................................................................................................. 17

*Holzapfel v. Town of Newburgh, N.Y.*

145 F.3d 516, 524 (2d Cir. 1998) ........................................................................................... 9

*Integrity Staffing Solutions, Inc. v. Busk*,

135 S. Ct. 513 (2014) ........................................................................................................... 12

*Irizarry v. Catsimatidis*,

722 F.3d 99 (2d Cir. 2013) ............................................................................................ 6, 19, 21

*Jackson v. Bloomberg, L.P.*,

298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................................ 7, 8

*Jemine v. Dennis*,

08-CV-3072, 2012 WL 4482769 (E.D.N.Y. Sept. 28, 2012) .................................................. 17

*Kuebel v. Black & Decker Inc.*,

643 F.3d 352 (2d Cir. 2011) ............................................................................................ 6, 7, 20

*Lahcen v. Kiran Park Newsstand Inc.*,

    No. 11 CV 5998 VB, 2014 WL 3887222 (S.D.N.Y. Aug. 7, 2014) .................................... 7, 10

*Lenroot v. Interstate Bakeries Corp.*,

    146 F.2d 325 (8th Cir. 1945) .................................................................................................. 20

*Lundy v. Catholic Health Sys. of Long Island Inc.*,

    711 F.3d 106 (2d Cir. 2013) .................................................................................................. 13

*Maliza v.2001 MAR-OS Fashion, Inc.*,

    CV-07-463, 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) ...................................................... 17

*McLaughlin v. Richland Shoe Co.*,

    486 U.S. 128 (1988) .............................................................................................................. 18

*Merlo v. Fed. Exp. Corp.*,

    No. CIV.A., 07-4311, 2010 WL 2326577 (D.N.J. June 7, 2010) ............................................ 15

*Mitchell v. Lublin, McGaughy & Assoc.*,

    358 U.S. 207 (1959) ................................................................................................................ 6

*Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*,

    723 F.3d 192 (2d Cir. 2013) .................................................................................................. 14

*Nationwide Mut. Ins. Co. v. Darden*,

    503 U.S. 318 (1992) .............................................................................................................. 19

*Norceide v. Cambridge Health Alliance*,

    814 F. Supp. 2d 17 (D. Mass. 2011) ..................................................................................... 13

*People ex rel. Price v. Sheffield Farms-Slawson Farms-Decker Co.*,

    121 N.E. 474 (N.Y. 1918) ...................................................................................................... 20

*Reich v. Southern New England Telecomms. Corp.*,

    121 F.3d 58 (2d Cir. 1997)............................................................ 7, 17

*Reilly v. NatWest Mkts. Grp., Inc.*,

    181 F.3d 253 (2d Cir. 1999)...................................................... 7, 17, 19

*Roach v. T.L. Cannon Corp.*, No.,

    13-3070-CV, 2015 WL 528125 (2d Cir. Feb. 10, 2015) ........................ 11

*Rutherford Food Corp. v. McComb*,

    331 U.S. 722 (1947).......................................................................... 20

*Salomon v. Adderley Indus., Inc.*,

    960 F. Supp. 2d 502 (S.D.N.Y. 2013)................................................ 16

*Steiner v. Mitchell*,

    350 U.S. 247 (1956).......................................................................... 11

*Tenn Coal, Iron & R.R. Co.*,

    321 U.S. 590 (1944).......................................................................... 11

*Tony and Susan Alamo Foundation v. Sec'y of Labor*,

    471 U.S. 290 (1985)............................................................................ 6

*United States v. Klinghoffer Bros. Realty Corp.*,

    285 F.2d 487 (2d Cir.1960)............................................................... 13

*United States v. Rosenwasser*,

    323 U.S. 360 (1945).......................................................................... 19

*Walling v. Harnischfeger Corp.*,

    325 U.S. 427 (1945)............................................................................ 8

*Walling v. Portland Terminal Co.*,

    330 U.S. 149 (1947)............................................................................ 19

*Walling v. Youngerman-Reynolds Hardwood Co.*,

    325 U.S. 419 (1945)........................................................................ 7, 8

*Yu G. Ke v. Saigon Grill, Inc.*,

    595 F. Supp. 2d 240 (S.D.N.Y. 2008)............................................ 17

**State Cases**

*Angello v. Labor Ready, Inc.*,

    7 N.Y.3d 579, 825 N.Y.S.2d 674 (App. Div. 1st Dept. 2006)................. 15

*Carter v. Frito–Lay, Inc.*,

    74 A.D.2d 550, 425 N.Y.S.2d 115(1st Dep't 1980),.............................. 17

*Consol. Masonry Contractors, Inc. v. Angello*,

    2 A.D.3d 997, 770 N.Y.S.2d 134 (2d Dep't 2003)............................... 18

*Edlitz v. Nipkow & Kobelt, Inc.*,

    264 A.D.2d 437, 694 N.Y.S.2d 439 (1999) ......................................... 16

*P & L Grp., Inc. v. Garfinkel*,

    150 A.D.2d 663, 664, 541 N.Y.S.2d 535 (1989) ................................. 18

*Karanjawala v. Associated Humane Societies, Inc.*,

    No. A-3560-08T2, 2010 WL 4025911 (N.J. Super. Ct. App. Div. Aug. 20, 2010) ................ 15

**Federal Statutes**

29 U.S.C. §§ 201, *et seq.*................................................................... 1

29 U.S.C. § 203.................................................................................. 9, 19

29 U.S.C. § 206.................................................................................. 9, 13

29 U.S.C. § 207 ................................................................................................ 6, 9

29 U.S.C. § 211 ................................................................................................... 6

29 U.S.C. § 216 ............................................................................................. 17, 19

29 U.S.C. § 255 ................................................................................................. 17

29 U.S.C. § 260 ................................................................................................. 17

### State Statutes

N. J. S. A. 34:11-56a25 ..................................................................................... 19

N.J. Stat. Ann. § 34:11-56a, *et seq.* .................................................................. 1

N.J. Stat. Ann. § 34:11-56a4 ............................................................................. 10

N.Y. C.P.L.R. § 5001(a) ................................................................................... 19

N.Y. Labor Law §§ 650, et seq. ........................................................................... 1

### Federal Rules

Fed. R. Civ. P. 56(a) ........................................................................................... 6

### Federal Regulations

29 C.F.R. § 516.2(a)(7) ....................................................................................... 6

29 C.F.R. § 778.111(a) ........................................................................................ 9

29 C.F.R. § 778.112 ............................................................................................ 9

29 C.F.R. § 778.318 ..................................................................................... 11, 13

29 C.F.R. §§ 785.11 ............................................................................................ 9

### State Regulations

12 NYCRR § 142-2.2 ........................................................................................ 10

*N.J. Admin. Code § 12:56-1.2(a)(8)* ............................................................... 15

N.J. Admin. Code 12:56-6.5(b) ........................................................................ 10

N.J.A.C. 12:56-5.2(a) .................................................................................................................... 15

N.Y. Comp. Codes R. & Regs. tit. 12, § 142 ............................................................................. 10

**Other Authorities**

Bruce Goldstein, et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop:*

    *Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983, 1036-37 (1999)

    .................................................................................................................................................. 20

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs worked in a cable installation business that paid them a fixed "piece rate" per job, no matter how many hours they worked and no matter how long they waited to get work (Izquierdo Dep. at 127, 162), in contravention of governing wage and hour laws. Plaintiffs are at least the third set of workers to sue this business for these same violations; the first two lawsuits were settled following discovery. The business was also investigated by the New Jersey Department of Labor in 2012 for minimum wage and overtime violations. Defendants did nothing to comply with the law. They continue to pay their workers in the same way today.

Named and opt-in plaintiffs move for summary judgment as to liability on all claims, against defendants C & I Associates, Inc., C & I Telecommunications, Inc., Nelson Izquierdo, and Androke Polonio[1] (collectively, "C & I"). First, plaintiffs, who are non-exempt manual workers, regularly worked more than 40 hours in a week yet defendants failed to pay any overtime premium, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201, *et seq.*; the New York Labor Law (the "NYLL"), N.Y. Labor Law §§ 650, *et seq.*; and the New Jersey State Wage and Hour Law (the "NJSWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.* Second, plaintiffs failed to pay plaintiffs minimum wage for waiting time, in violation of those same laws.[2] Third, defendants took various deductions from plaintiffs' pay in violation of NYLL § 193 and failed to provide notices required by NYLL § 195. Fourth, defendants made no good faith effort to comply with the laws and acted willfully; consequently, they are liable for liquidated damages under the FLSA and NYLL, and a three-year limitations period applies to the FLSA claims. Finally, corporate defendants C & I Associates and C & I

---

[1] Plaintiffs acknowledge questions of material fact regarding defendant William Giannini, and accordingly do not seek summary judgment against him.

[2] Defendants deny the compensability of that waiting time. However, this is a dispute of law, which may appropriately be resolved on this motion.

Telecommunications, and the individual managers Nelson Izquierdo and Androke Polonio, are plaintiffs' employers within the meaning of the FLSA, NYLL, and NJSWHL.

## BACKGROUND[3]

Named and opt-in plaintiffs install equipment that allows Cablevision, a national cable television, telephone, and internet provider, to provide paid services in customers' residences. (Izquierdo Dep.[4] at 9, 131; Ureña Aff. Ex. 14 at CI 000026; *id.* Ex. 15)  Most employees worked out of a warehouse in the Bronx; some employees worked out of a warehouse in New Jersey. (Izquierdo Dep. at 76-77; 145-46) C& I Associates has been incorporated since 1985; C & I Telecommunications was incorporated in July 2009 for the New Jersey work.  (Ureña Aff. Exs. 13, 16)  C & I Associates and C & I Telecommunications do more than $500,000 per year in gross business.  (Ureña Aff. Ex. 17) They do business with out of state vendors.  (Izquierdo Dep. at 199)  Technicians sometimes transferred between the two locations.  (Polonio Dep. at 55-56)

Defendant Nelson Izquierdo has been general manager at C & I Associates since 2009; prior to that he was office managers with responsibilities that included payroll.  (Izquierdo Dep. at 9, 10, 11-14, 137-38)  Izquierdo supervises defendant Androke Polonio, who was hired in 2002 and manages the technicians and the technicians' direct supervisors.  (Izquierdo Dep. at 12; Polonio Dep. at 8, 52, 53)  Izquierdo and Polonio set up the New Jersey location and ran it for a few months.  (Izquierdo Dep. at 145-46, 149, 151)

The New York and New Jersey locations operated in the same way with respect to employment of technicians.  (Izquierdo Dep. at 145-46)  In a typical day, technicians report to

---

[3] For the purposes of this motion, facts are set forth in the light most favorable to the defendants.  Plaintiffs reserve the right to contest defendants' assertions for all other purposes.

[4] Excerpts from deposition transcripts are attached as exhibits to the accompanying Affirmation of David Ureña, March 13, 2015 ("Ureña Aff."), and cited as "[Deponent Name] Dep."  Other accompanying affirmations are cited as "[NAME] Aff."

the warehouse, wait, pick up their routes and equipment (the "morning warehouse processing"); travel to customer residences and perform work; and then return to the warehouse at the end of the day to return equipment and submit paperwork (the "evening warehouse processing"). (Polonio Dep. at 46; Almanzar Dep. at 75-76; Juan De La Cruz Dep. at 22-23, 60-61; Diaz Dep. at 27-28; Ogando Dep. at 26-28; Juaneris De La Cruz Dep. at 30-32; Reyes Dep. at 45-46; Menaldo Dep. at 26-27)

Technicians regularly worked more than 40 hours in a week on at least some occasions, based on the undisputed record.[5] Defendant Polonio testified that a "typical" workweek for a technician was eight hours per day, five days per week—40 hours. (Polonio Dep. at 14) Taking this assertion as true for purposes of this motion, both Polonio and General Manager Izquierdo admitted that there were times when work was heavier and technicians would work more. (Izquierdo Dep. at 58-59; Polonio Dep. at 56-57) Several plaintiffs testified they worked six days per week (Corporan Dep. at 34-35; Diaz Dep. at 40; Done Dep. at 22; Menaldo Dep. at 23-24; Reyes Dep. at 45) and defendants' documents also reflect six-day weeks. (Ureña Aff. Ex. 27) Plaintiffs kept daily logs in the regular course of business of their time spent at jobs (not including warehouse time), some of which record more than 40 hours in a week on their face. (Almanzar Aff. Ex. 1 (40.65 hours); Corporan Aff. Ex. 1 (47.83 hours); Reyes Aff. Ex. 1 (59.42 hours)) Defendants further admitted that technicians arrived as early as 7 a.m. and stayed as late as 7 p.m.; defendants do not have (and indeed erased) time punch records of plaintiffs' hours. (Izquierdo Dep. at 120, 159-61, 175-76; Polonio Dep. at 15, 24).

Technicians regularly were asked to spend time for the benefit of C & I for which they were not compensated. General Manager Izquierdo testified that when technicians arrive in the

---

[5] On this motion, plaintiffs seek judgment that defendants are liable, *i.e.*, that at least some hours were improperly compensated. They do not seek to establish their damages.

warehouse "it takes a while to process them, to give them the equipment they need, plus to issue them the work. Then you have to scan all the assets, or the converters and modems that they take . . . so we are able to track them." (Izquierdo Dep. at 120; *see also* Ureña Aff. Ex. 28) Defendant Manager Polonio similarly admitted: "[M]any times . . . the technician has to wait 15 to 20 minutes to half an hour" between arrival and punching in. (Polonio Dep. at 73-74) It is undisputed that the morning warehouse processing typically takes at least a half an hour; sometimes it takes longer because C & I does not get the work from Cablevision on time. (Izquierdo Dep. at 120-22) There is additional mandatory evening warehouse processing of twenty minutes to half an hour. (Polonio Dep. at 51; Izquierdo Dep. at 133-34)

C & I Associates admits it took unlawful deductions from technicians' pay. For example, C & I admits it deducted money for damaged or missing equipment. (Izquierdo Dep. at 178; Polonio Dep. at 67) C & I also deducted money for payroll loans, but did not maintain the required written policy to afford an employee the opportunity to contest the amount of the deduction. (Izquierdo Dep. at 67-68, 222-23; Ureña Aff. Ex. 20)

The initial complaint in this action was filed on March 14, 2014; amended complaints were filed on May 22, 2014 and August 21, 2014. (Doc. #2, 25, 42) On consent of the parties, the Court ordered notice to be sent to potential collective action members. (Doc. #41) The notice was mailed to a list of employees furnished by defendants. Ten named plaintiffs and 35 opt-in plaintiffs[6] filed consents to sue as set forth below:[7]

---

[6] One additional opt-in plaintiff, William Francisco Castillo, filed a consent to sue but did not work as a technician. Plaintiffs have signed a stipulation of dismissal for his claim.

[7] Plaintiffs have decided not to pursue Rule 23 class certification of the state law claims in this case. Defendants have not moved for decertification of the FLSA collective action.

| Plaintiff | ECF Docket No. |
|---|---|
| Constantino Acevedo | 68 |
| Juan Ramon Alejandro Guerrero | 81 |
| Cesar Almanzar | 2 |
| Khardryk R Artis | 79 |
| Ernst Jean Baptiste | 73 |
| John Bennett | 50 |
| Jose Victor Bermudez | 62 |
| Raul Campusano | 56 |
| Felix Corporan | 2 |
| Jorge Corporan | 58 |
| Wilkin Alexander Corporan | 61 |
| Juan De La Cruz | 2 |
| Juaneris De la Cruz | 2 |
| Juan Diaz | 4 |
| Wilson Espinosa | 57 |
| Maiker Estrella | 77 |
| Juan Evaristo Felix Castro | 51 |
| Elinller Frias | 70 |
| Sergio Garcia | 75 |
| Carlos Hilberto Hernandez | 53 |
| Yordy M Hernandez | 78 |
| Joel Jimenez | 76 |
| James Dee Jimenez Duran | 72 |
| Edward Jorge | 48 |
| Gerasimo Eusebio Liranzo | 71 |
| Marc Azer Louis Jean | 59 |
| Pedro E. Madera | 55 |
| Frederick Malcolm | 54 |
| Alcides Matos | 46 |
| David Matos | 47 |
| Juan Mindi-Soto | 52 |
| Juan Ogando | 2 |
| Noe Oscar Paulino | 60 |
| Emilio Perez | 66 |
| Wilson Daniel Perez | 67 |
| Claudio Antonio Pimentel | 63 |
| Fausto Pineda | 49 |

| Markeith J Powell | 74 |
| Marcus Reyes | 2 |
| Jose M. Rodriguez | 65 |
| Michael Alberto Rodriguez | 80 |
| Wilson Rossis | 2 |
| Ernest J. Torres | 64 |

## ARGUMENT

Construing the evidence in the light most favorable to defendants, and drawing all reasonable inferences their favor, summary judgment as to liability against C & I is appropriate here because "there is no genuine dispute as to any material fact and [plaintiffs are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011).

I.   Defendants Unlawfully Failed to Pay Plaintiffs Overtime

A.   FLSA

The FLSA was enacted with "broad remedial purposes." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1516, 188 L. Ed. 2d 450 (2014). Courts have thus "consistently construed the [FLSA] 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959)).

The FLSA assigns an employer the non-delegable duty to make and maintain accurate records of the time worked by its employees, and to pay employees for such work. 29 U.S.C. §§ 207(a), 211(c); 29 C.F.R. § 516.2(a)(7); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 944, 946 (2d Cir.1959). For hours worked in excess of 40 hours in a workweek, an employee is entitled to overtime pay of "not less than one and one-half times the regular rate," 29 U.S.C. § 207(a)(1). "[B]y increasing the employer's labor costs by 50% at the end of the 40-hour week

and by giving the employees a 50% premium for all excess hours, Section 7(a) achieves its dual purpose of inducing the employer to reduce the hours of work and to employ more men and of compensating the employees for the burden of a long workweek." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 423-24 (1945).

"'To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Lahcen v. Kiran Park Newsstand Inc.*, No. 11 CV 5998 VB, 2014 WL 3887222, at *4 (S.D.N.Y. Aug. 7, 2014) (quoting *Kuebel*, 643 F.3d at 361).

### 1. *Technicians Worked More Than 40 Hours in a Workweek*

Plaintiffs have established that they worked in excess of 40 hours in workweeks during their employment with defendants. Defendants failed to keep time records – indeed defendants admitted that their time clock continued routinely deleting such records even nine months after this action was filed. (Izquierdo Dep. at 159-61) As a result, plaintiffs may prove their hours through representative testimony. *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997). Plaintiffs also benefit from an inference that the spoliated records would have supported their testimony. *See Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

For a summary judgment determination of liability, plaintiffs need only "produce sufficient evidence to establish that [they] have in fact performed work for which they were improperly compensated and . . . to show the amount and extent of that work 'as a matter of just and reasonable inference.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 168 (S.D.N.Y. 2014) (quoting *Southern New England Telecomms. Corp.*, 121 F.3d at 69, in turn quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), alterations in *Jackson*). "Upon meeting this

evidentiary threshold, the fact of damage is established, and the only potential uncertainty is in the amount." *Jackson*, 298 F.R.D. at 168 (citation omitted)).

In this case, plaintiffs have met their burden through testimony, including defendants' admissions that there was sometimes more work than the "typical" 40 hour workweek, and through documents. (*Supra* p. 3) Defendants cannot rebut this showing. They do not have records of the hours plaintiffs worked and, indeed, erased their time punch records. (Izquierdo Dep. at 159-61; Polonio Dep. at 72) Thus, the fact of damage – liability – is established.

## 2. *Technicians Were Not Properly Compensated for Overtime*

Defendants paid, and continue to pay, technicians a straight "piece rate" no matter how many hours worked in the week. (Izquierdo Dep. at 127, 162) This method of payment is not proper compensation for overtime. *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 425 ("Insofar as the wage agreements [including piece-rate compensation] failed to provide for the payment of one and one-half times this regular rate for all overtime hours they plainly required the requirements of [FLSA] Section 7(a)."); *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432 (1945) ("Until that [overtime] premium is 50% of the actual hourly rate . . . Section 7(a) has not been satisfied.").

Workers paid in this way are entitled to an overtime premium for hours over 40 worked in a week:

> If the employee is paid a flat sum for . . . doing a particular job, without regard to the number of hours worked . . . , and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112; *see* 29 U.S.C. § 207(g); 29 C.F.R. § 778.111(a). It is undisputed that no such premium was paid. (Izquierdo Dep. at 127, 162) Thus, the technicians were not properly compensated for their overtime under the FLSA.

### 3. Defendants Knew or Should Have Known of Plaintiffs' Hours

While defendants' lack of records of the hours plaintiffs worked prevents their rebutting plaintiffs' showing of overtime, it does not shield C & I from liability to pay for the work as required by law. *See Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 287-88 (2d Cir. 2008); *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998); 29 C.F.R. §§ 785.11–13. Technicians begin and end their work day on-site, punch a (now erased) time clock, turn in logs listing the times they went to each job while off-site, and report to supervisors at the beginning and end of their shifts. (Izquierdo Dep. at 120-22, 159-61; Polonio Dep. at 72)

### 4. FLSA Applicability

The FLSA applies to any enterprise "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s), § 206(a), and 207(a)(1). Such an enterprise "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... [its] annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i) & (ii). C & I used supplies from out of state and transferred employees between related companies. (Izquierdo Dep. at 199) Each of the corporate defendants has admitted gross sales of more than $500,000. (Ureña Aff. Ex. 17) C & I Associates, C& I Telecommunications, Izquierdo, and Polonio were a common enterprise because they performed related activities under unified operation or common control, for a common business purpose. 29 U.S.C. § 203(r); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 525 (S.D.N.Y. 1998) (citing *Brennan v. Arnheim & Neely*, 410 U.S. 512, 518

(1973)) (Sotomayor, J.); No. 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) (operations director, president, and corporation constituted a single FLSA "enterprise," finding the "inference to be inescapable" that some of the company's materials or equipment originated out of state).

      B. <u>State Law</u>

Similarly, defendants are liable for failure to pay overtime under the NYLL and the NJSWHL. The standard for showing liability for overtime claims here is the same under the NYLL as the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2 (2011) (incorporating the FLSA definition of overtime into the NYLL); *Lahcen*, 2014 WL 3887222, at *4. The regulation requires employers to pay employees one and one-half times the regular hourly rate for all hours worked in excess of 40 in one workweek, and incorporates the FLSA provisions regard piece-work. 12 NYCRR § 142-2.2; *see* NYLL § 160. Thus, the technicians have demonstrated liability for nonpayment of overtime under the NYLL.

The New Jersey State Wage and Hour Law is similar. Workers must be paid "1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week." N.J. Stat. Ann. § 34:11-56a4, and that amount can be "determined on a piece-rate, salary, bonus, commission or other basis, but the overtime compensation due to employees shall be paid on the basis of the hourly rate derived therefrom." N.J. Admin. Code 12:56-6.5(b). The regulations go on to specify: "Therefore, the regular hourly wage of an employee is determined by dividing his or her total remuneration for employment, exclusive of overtime premium pay, in any workweek, by the total number of hours worked in that workweek for which such compensation was paid." *Id.* Thus, the technicians have demonstrated liability for nonpayment of overtime under the NJSWHL.

II.    Defendants Unlawfully Failed to Pay Plaintiffs Minimum Wage for Waiting Time

A.    Plaintiffs' Waiting Time is Compensable Time

It is uncontested that plaintiffs spent time waiting for work. (*E.g.* Izquierdo Dep. at 120, Polonio Dep. at 73-74)  Work is compensable if it is performed primarily for the benefit of the employer and is an integral part of and is essential to the principal activities of the employees. *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956); *Tenn. Coal, Iron & R.R. Co.*, 321 U.S. 590, 598 (1944).  Courts have held time like the waiting time at issue in this case to be compensable: Judge Posner noted, in a similar case, that technicians employed to install and repair home satellite dishes and paid on a piece-rate basis "are entitled to be paid the federal minimum wage for every hour they work, and 1.5 times their regular hourly wage for every hour they work in excess of 40 hours a week." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772-73 (7th Cir. 2013) (citing 29 C.F.R. § 778.318).[8]

Another Court similarly held:  "When shop activities are an indispensable part of an employees' principal activities, the shop time is compensable." *Chao v. Akron Insulation & Supply, Inc.*, No. 5:04-CV-0443, 2005 WL 1075067, at *8 (N.D. Ohio May 5, 2005), *aff'd* 184 F. App'x 508 (6th Cir. 2006).  Reporting to a designated meeting place, receiving assignments, and loading equipment are integral to the principal activities. *Id.* (collecting cases).

*Akron Insulation & Supply*, like this case, involved workers who reported to a central fixed location (the "shop") in the morning, went out to residential and commercial buildings to

---

[8] The Court in *Espenscheid* upheld the decertification of FLSA collective action because plaintiffs had not presented a feasible trial plan to determine damages for the 2341 technicians in the accompanying Rule 23 class.  705 F.3d at 772.  Here, in contrast, plaintiffs will present expert evidence on damages for the 45 collective action members, which is sufficient under Second Circuit law even for the more rigorous Rule 23 class certification. *Roach v. T.L. Cannon Corp.*, No. 13-3070-CV, 2015 WL 528125, at *7 (2d Cir. Feb. 10, 2015); *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE, 2014 WL 7183956, at *6 (S.D.N.Y. Dec. 17, 2014).

perform installations (of insulation, an immaterial difference) during the day, then returned to the shop at the end of the day. 2005 WL 1075067, at *2. The *Akron Insulation* employer alleged that waiting time was not compensable since the employees voluntarily clocked in early to drink coffee and socialize and were not working. The Court rejected the argument. *Id.* ("To the extent that the employees were waiting (and drinking coffee or socializing) in the morning, they were waiting for the employer's benefit and could not use the time for their own purposes."). The undisputed facts here are even more compelling, because defendant managers admit that even in the most efficient of scenarios workers had to spend at least 30 minutes in the morning and 20 to 30 minutes in the evening waiting for the check in and check out process to be completed. (Izquierdo Dep. at 120; Polonio Dep. at 73-74)

The Supreme Court's holding in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 520 (2014), does nothing to change the compensable nature of the waiting time. *Integrity Staffing Solutions* involved time required for security checks that had nothing to do with the work performed. *Id.* This case involves time getting work assignments and picking up and dropping off equipment and paperwork needed to complete—and ensure proper payment to the company for—the primary job. (Izquierdo Dep. at 120-125, 133-34; Polonio Dep. at 46-50, 51, 73-74, 81, 83-85) Indeed defendants' admission here that the evening warehouse processing could be shortened by greater efficiency during the day (Izquierdo Dep. at 50-51, 54) wholly undermines any claim that such time is preliminary or postliminary rather than integral to the primary job: inefficiency does not render work time non-compensable. *Cf., e.g. Gotham Registry, 514 F.3d at 288* (employer liable for overtime even if the work was unwanted).

B.  FLSA

The FLSA established a minimum wage for each hour of compensable time.  42 U.S.C. § 206.[9]  As piece-rate workers with no agreement that the per-job pay covers nonproductive time, plaintiffs are entitled to minimum wage for the waiting time.  True, the Second Circuit has held that the minimum wage under the FLSA is typically computed as an average over the workweek, disallowing "gap time" claims.  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013).[10]

For piece-rate workers, however, the employer cannot average income over the week for minimum wage purposes unless there is a clear understanding that the piece rate includes an amount to compensate in part for the non-productive hours spent each week.  *Espenscheid*, 705 F.3d at 772-73 (citing 29 C.F.R. § 778.318); WH Admin Op., 1963 DOLWH LEXIS 136 (Jan. 11, 1963).  Indeed the Court in *Lundy* reasoned: "[T]he *agreement to work certain additional hours for nothing* was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid. " 711 F.3d at 118 (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir.1960)) (emphasis added); *see also Douglas v. Xerox Bus. Servs. LLC*, No. C12-1798-JCC,

---

[9] It appears that there may have been some weeks in which plaintiffs were simply not paid the minimum wage for the total hours they worked in the week.  For example, defendants' pay documents demonstrate that plaintiff Marcus Reyes was paid as little as $170 (pay period ending 10/29/11) and $142 (pay period ending 6/2/11) (Ureña Aff. Ex. 19).  Taking Polonio's testimony that technicians worked 40-hour workweeks (Polonio Dep. at 14) to be true, this results in an hourly rate of $4.25 and $3.55, respectively.  Similarly, according to defendant's admissions to the New York State Division of Human Rights, defendants placed plaintiffs Juan Diaz and Wilson Rossis, and two other technicians, in a "retraining period" that resulted in their receiving only one job per day for fifteen days.  (Ureña Aff. Ex. 14 at CI 000032)  Because of likely factual disputes, plaintiffs do not move for affirmative summary judgment on these claims but reserve the right to assert them at trial.

[10] Not all courts agree with this interpretation of the FLSA.  *See, e.g.*, *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17 (D. Mass. 2011).

2014 WL 3396112, at *3 (W.D. Wash. July 10, 2014) (telephone operators who are paid on a per-transaction basis, with additional payment to keep their weekly rate above a certain hourly "floor," may have claims for uncompensated waiting time if there was no agreement that the per-transaction payments covered nonproductive time).

There was no such agreement here. Named plaintiffs testified unequivocally that they were not paid for waiting time. (Almanzar Dep. at 76-78; Juan De La Cruz Dep. at 62; Ogando Dep. at 58-59; Juaneris De La Cruz Dep. at 71-72; Reyes Dep. at 59-60) Defendants' managers admitted that the only discussion they had with the workers was that they would be paid "piece rate." (Izquierdo Dep. at 128, 130, 163; Polonio Dep. at 79) There was no written agreement memorializing the "piece rate" pay method. (Izquierdo Dep. at 163) Indeed defendants' documents, including written pay agreements, payroll documents, and pay stubs, purport to show an hourly rate with time and a half paid for overtime. (*E.g.* Ureña Aff. Exs. 18, 19)

Technicians were instructed to punch in after they received their routes and punch out before returning their equipment in the evening. (Polonio Dep. at 73; Diaz Dep. at 50-51) Because defendants cannot establish the existence of a clear understanding that the piece rate was intended to compensate for non-productive time, and because it is undisputed that plaintiffs were worked at least some such time on a daily basis, plaintiffs are entitled to summary judgment on liability for minimum wage violations under the FLSA.

C. State Law

The NYLL allows claims for gap-time compensation much more broadly than the FLSA. *Cromwell v. New York City Health & Hospitals Corp.*, 983 F. Supp. 2d 269, 271 (S.D.N.Y. 2013) ("Claims for gap-time compensation are cognizable under the NYLL but not the FLSA.") (citing *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). New York law provides: "Every employer shall pay to each of its employees *for each hour*

*worked* a wage of not less than" the applicable statutory minimum. NYLL § 652 (emphasis added). "If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action . . . . Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action." NYLL § 663(1).

Similarly under the NJSWHL, employees "shall be paid for all hours worked." N.J.A.C. 12:56–5.1; *see N.J. Admin. Code § 12:56-1.2(a)(8).* "All the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked." N.J.A.C. 12:56-5.2(a). Courts have held that plaintiffs may bring a private claim to enforce these provisions even though they were paid more than the statutory minimum wage. *Merlo v. Fed. Exp. Corp.*, No. CIV.A. 07-4311, 2010 WL 2326577, at *10 (D.N.J. June 7, 2010); *cf. Karanjawala v. Associated Humane Societies, Inc.*, No. A-3560-08T2, 2010 WL 4025911, at *4 (N.J. Super. Ct. App. Div. Aug. 20, 2010) (time groundskeeper was "engaged to wait" was compensable).

Thus, even if plaintiffs' waiting time claims were to be considered excluded by *Lundy* (which they should not), plaintiffs have established liability under the NYLL and NJSWHL for the failure to pay minimum wage for non-productive waiting time, such as the morning and evening warehouse time.

III.    Additional NYLL Violations:  Notices and Deductions

Section 193 of the NYLL prohibits an employer from making "any deduction from the wages of an employee" unless permitted by law or authorized by the employee for "insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee." NYLL § 193(1)(a)&(b); *see Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579, 585, 825 N.Y.S.2d 674 (App. Div. 1st Dept. 2006) (deduction of

transaction fee for paying wages in cash was unlawful); *Edlitz v. Nipkow & Kobelt, Inc.*, 264 A.D.2d 437, 694 N.Y.S.2d 439, 440 (1999) (deduction for customer's failure to pay defendant unlawful).

The New York Labor Law requires defendants to provide a notice to workers "at the time of hiring," and, until this year, "on or before February first of each subsequent year of the employee's employment." The notice must contain information including the employees' pay rate and the name of the employer. NYLL § 195(1); *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 511 (S.D.N.Y. 2013).

Defendants admit they took such unlawful deductions and provided no such notices. Indeed General Manager Izquierdo told technicians to disregard the notices when his subordinate tried to distribute them to the employees. (Izquierdo Dep. at 73) Defendants took deductions for missing equipment. (Izquierdo Dep. at 177-78; Polonio Dep. at 67) Such deductions are exactly what the statute was intended to prohibit. Section 193 was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee. *D'Arpa*, 2013 WL 3010810, at *23. C & I also deducted money for payroll loans, but did not maintain the required written policy to contest the amount of the deduction. (Izquierdo Dep. at 67-68, 222-23; Ureña Aff. Ex. 20) NYLL § 193(1)(d) expressly prohibits such deductions. Plaintiffs are entitled to declaratory relief and civil damages. NYLL §§ 198(1-b), (1-d).

IV. <u>Defendants Made No Good Faith Effort to Comply with, and Willfully Violated the Law</u>

    A. <u>Good Faith</u>

Plaintiffs are entitled to liquidated damages under both federal and state law. Under the FLSA and the NYLL, liquidated damages must be awarded unless the employer can demonstrate that he acted in good faith and had reasonable grounds for believing that his act or omission was

not a violation of the law.  29 U.S.C. §§ 216(b), 260; NYLL § 198(1-a).[11]  To avoid such an award, defendants must establish by "'plain and substantial' evidence, subjective good faith and objective reasonableness." *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 70–71 (2d Cir.1997) (citing 29 U.S.C. § 260). This burden, "is a difficult one to meet . . . and '[d]ouble damages are the norm, single damages the exception.'" *Id.* at 71 (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987)).

Courts routinely award damages under the FLSA in addition to those due under the NYLL because of the different purpose of each of the provisions.  Liquidated damages under the NYLL (here, 25 percent of unpaid wages)  "'constitute a penalty' to deter an employer's willful withholding of wages due." *NatWest Markets Group*, 181 F.3d at 265 (quoting *Carter v. Frito–Lay, Inc.*, 74 A.D.2d 550, 425 N.Y.S.2d 115, 116 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (N.Y.1981)).  Under the FLSA, in contrast, the additional 100% amount serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." *Herman v. RSR Secs. Servs.*, Ltd., 172 F.3d 132, 141–42 (2d Cir. 1999).  Thus, both types of damages are warranted.  *Jemine v. Dennis*, 08-CV-3072, 2012 WL 4482769 (E.D.N.Y. Sept. 28, 2012); *Maliza v.2001 MAR-OS Fashion, Inc.*, CV-07-463, 2010 WL 502955, *1 & n. 4 (E.D.N.Y. Feb. 10, 2010); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261–62 (S.D.N.Y. 2008).

B.  Willfulness

A plaintiff must commence a suit under the FLSA within two years after the cause of action has accrued, unless a plaintiff can demonstrate that a defendant's violation of the Act was willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255. For an

_____

[11] Prior to 2009, the NYLL standard was willfulness.  *Infra* IV. B.

employer's actions to be willful, the employer must have "either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Summary judgment is warranted if the record allows the Court to conclude, as a matter of law, that defendants acted willfully. *D'Arpa*, 2013 WL 3010810, at *4 (granting summary judgment on willfulness and applicability of three-year limitations period).

Prior to November 24, 2009, the NYLL standard for liquidated damages was willfulness. L. 2009, ch. 372, § 1. Under that standard, courts found willfulness "where the employer, 'knowingly, deliberately, [or] voluntarily' disregards its obligation to pay wages." *P & L Grp., Inc. v. Garfinkel*, 150 A.D.2d 663, 664, 541 N.Y.S.2d 535, 537 (App. Div. 2d Dept. 1989). A willfulness finding is warranted if substantial evidence tends to demonstrate that the employer knew or should have known that it was violating the law. *Consol. Masonry Contractors, Inc. v. Angello*, 2 A.D.3d 997, 770 N.Y.S.2d 134, 136 (2d Dep't 2003).

C. Undisputed Facts Show Lack of Good Faith and Willfulness; Additional Damages

Here, the undisputed facts allow no possibility of defendants' establishing good faith, and demonstrate willfulness as a matter of law: having been sued three times and investigated by a state agency for the illegal pay practices challenged here, defendants' General Manager, in charge of pay, has not changed the pay method or done anything to determine if it is legal. (Izquierdo Dep. at 164, 207-209; Ureña Aff. Ex. 23; *Beaumont et al. v. C & I Sales, Inc.*, No. 09 Civ. 5362 (E.D.N.Y.); *Tait v. C & I Sales, Inc.*, No. 11 Civ. 2777 (E.D.N.Y.))[12] Instead, defendants erased their time punch records and maintained documents inaccurately showing an

---

[12] Plaintiffs will not seek damages for amounts recovered or claims properly released in earlier actions.

hourly rate with time and a half for overtime. (Izquierdo Dep. at 159-61; Ureña Aff. Exs. 18, 19)

Defendants retained lawyers who proposed a change to the pay method in late 2009.  (Izquierdo

Dep. at 94; Ureña Aff. Ex. 25, 26)  No change was ever made.  (Izquierdo Dep. at 96)

Thus, defendants are liable for liquidated damages under both federal and state law, and

the statute of limitations applicable to plaintiffs' FLSA claims should be three years.  Plaintiffs

are also entitled to attorneys' fees.  *See* 29 U.S.C. § 216(b), NYLL § 198(1-a), (1-d), N. J. S. A.

34:11-56a25.  Finally, plaintiffs are entitled to pre-judgment interest under the NYLL.  N.Y.

C.P.L.R. § 5001(a); *Reilly*, 181 F.3d at 265.

V.    <u>Defendants C & I Associates, C & I Telecommunications, Androke Polonio, and Nelson
      Izquierdo were Plaintiffs' "Employers" Within the Meaning of the FLSA, NYLL, and
      NJSWHL</u>

      A.  <u>Congress broadly defined "employ" to require FLSA compliance by entities who
          "suffer or permit" others to work.</u>

      Congress adopted an exceptionally broad definition of "employ" as including "to suffer

or permit to work." 29 U.S.C. § 203(g). It is "the broadest definition [of employ] that has ever

been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)

(*quoting* the FLSA's principal sponsor, Senator Hugo Black, 81 Cong. Rec. 7657 (1937)).  The

"striking breadth" of this definition is intended to cover many relationships not considered

"employment" at common law.[13] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992);

*Walling v. Portland Terminal Co.*, 330 U.S. 149, 152 (1947); *Irizarry v. Catsimatidis*, 722 F.3d

99, 104 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1516 (2014).

---

[13] Under the common law test for employment, courts inquired only whether the alleged
employer had the "right to control the manner and means by which the product is accomplished"
for purposes of tort liability. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-
52 (1989). Only where the alleged master had the right to control details of a servant's work and
the work was performed negligently, was it fair to hold the master accountable as tortfeasor or as
the employer.

When Congress incorporated this expansive concept of "employ" into the FLSA in 1938, state courts, including New York and New Jersey, had already applied this definition for decades to enforce child labor prohibitions. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).[14]  In general, employers in child labor cases were presumed to have the power to prevent underage children from working, so long as the work as performed in or in connection with the business. As Judge Cardozo explained:

> [The employer] must neither create nor suffer in his business the prohibited conditions. The command is addressed to him. Since the duty is his, he may not escape it by delegating it to others . . . He breaks the command of the statute if he employs the child himself. He breaks it equally if the child is employed by agents to whom he had delegated "his own power to prevent."

*People ex rel. Price v. Sheffield Farms-Slawson Farms-Decker Co.*, 121 N.E. 474, 475-76 (N.Y. 1918) (internal citations omitted).  Employers were, and still are, liable if they had "knowledge or the opportunity through reasonable diligence to acquire knowledge" that such work was being performed. *Id.* at 476; *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir. 1945); *Kuebel*, 643 F.3d at 361.

B.  Defendants are Employers Under Relevant Laws

It appears to be undisputed that defendants C & I Associates, Inc. and C & I Telecommunications, Inc. were employers of the Bronx and New Jersey-based technicians, respectively.  (Ureña Aff. ¶¶ 4-6; *see also id.* Ex. 14 at CI 000026; Exs. 18, 24)

---

[14]  By 1907, fourteen states already had on the books child labor laws containing the "suffer or permit to work" language, including Idaho, Illinois, Indiana, Kentucky, Maryland, Michigan, Minnesota, Missouri, Nebraska, New York, Oregon, Rhode Island, South Dakota, and Wisconsin. Many other states and territories used the "permit" standard in their child or women's or other protective labor laws: Alabama, Arizona, California, Connecticut, Florida, Kansas, Maine, New Jersey, North Dakota, Oklahoma, Pennsylvania, Vermont, and Wyoming. Bruce Goldstein, et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983, 1036-37 (1999) (citing Twenty-Second Annual Report of the Commissioner of Labor, 1907: Labor Laws of the United States (1908)).

Defendants Polonio and Izquierdo are liable as employers because they directly controlled plaintiffs' work; while such a direct level of operational control is not necessary to make out a claim of individual liability under the FLSA, it is sufficient. *D'Arpa*, No. 12 Civ. 1120, 2013 WL 3010810, at *12 (E.D.N.Y. Jun. 18, 2013) (manager with formal control was an employer regardless of shareholder status). Such control can (though need not) be made out via the four factors articulated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722. F.3d at 104-05. Those factors are: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (quoting *Carter*, 735 F.2d at 12). Defendants have admitted that the same analysis applies to the NYLL and NJSWHL claims. Defendant William Giannini's Memorandum of Law in Support of Motion for Judgment on the Pleadings, July 25, 2014, Doc. #34, at 3-4 & n.1.

Polonio and Izquierdo hired and fired technicians. (Izquierdo Dep. at 35; Polonio Dep. at 8, 16-18, 20) Polonio supervised and controlled employee work schedules. (Izquierdo Dep. at 32, 49; Polonio Dep. at 15) Polonio and Izquierdo supervised and controlled such conditions of employment as discipline. (Izquierdo Dep. at 118-19, 190) Izquierdo determined the rate and method of payment of the technicians.[15] (Izquierdo Dep. at 13-14) Izquierdo and Polonio both contributed to employment records, such as employment applications, and Izquierdo forwarded them to Cablevision and supervised the office personnel who maintained them. (Izquierdo Dep. at 34-35, 165-66; Polonio Dep. at 16, 31)

---

[15] Plaintiffs contend that Izquierdo consulted with defendant William Giannini in this process, but recognize a dispute of fact on that point.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court enter

Summary Judgment in their favor as to liability on all claims against C & I.

    Dated:  March 13, 2015
    New York, NY


                              _____
                              Maia Goodell
                              David Ureña,
                              of counsel to
                              Jeanette Zelhof,
                              MFY Legal Services, Inc.
                              Attorneys for Plaintiffs
                              299 Broadway, 4th Floor
                              New York, NY 10007
                               (212) 417-3749


                              Jonathan A. Bernstein
                              Levy Davis & Maher, LLP
                              39 Broadway, Suite 1620
                              New York, NY 10006
                              (212) 371-0033