UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CESAR ALMANZAR, FELIX CORPORAN,
JUAN DE LA CRUZ, JUANERIS DE LA
CRUZ, JUAN DIAZ, JORGE DONE,
VALENTIN MENALDO, JUAN OGANDO,
MARCUS REYES, AND WILSON ROSSIS,
individually, on behalf of all others
similarly situated, and as Class
Representatives,

       Plaintiffs,

   -against-

C & I ASSOCIATES, INC., C & I
TELECOMMUNICATIONS, INC.,
WILLIAM GIANNINI, NELSON
IZQUIERDO, and ANDROKE POLONIO,

       Defendants.

14-Cv-1810 (SHS)

OPINION & ORDER

------------------------------------------------------------

SIDNEY H. STEIN, U.S. District Judge.

 Defendants C & I Associates and C & I Telecommunications ("Associates" and "Telecom," respectively) are cable installation and servicing companies. They employ technicians such as plaintiffs to install and repair cable boxes, internet routers, modems, and other telecommunication equipment at the homes of customers of Cablevision, an internet and cable television service provider. Plaintiffs, who were paid by the completed task rather than by the hour, contend that they have not received the minimum wage and overtime pay mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and related New York and New Jersey labor laws.

 In August of 2014 the Court conditionally certified this litigation as a collective action pursuant to the FLSA. Forty-five individuals are plaintiffs in this action. Following discovery proceedings, plaintiffs have now moved for summary judgment solely on the question of defendants' liability;

defendants respond primarily that the FLSA exempts them from being obligated to pay overtime, *see* 29 U.S.C. § 207(i), and that, in any event, disputed facts prohibit summary judgment. For the reasons that follow, the Court grants in part and denies in part plaintiffs' motion for summary judgment.

## I.   BACKGROUND

Plaintiffs install and repair telecommunications equipment for customers of Cablevision, which is the primary client of both Associates and Telecom. (Pls.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Pls.' 56.1") ¶¶ 1-2, Dkt. 122; Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶¶ 1-2, Dkt. No. 108.)[1] A team of four people managed Associates and Telecom. Defendant William Giannini was initially part owner and later the sole owner of both companies. (Dep. of William Giannini dated Jan. 8, 2015 at 9:10-13, 10:4-7, 16:9-11, Ex. 27 to Affirmation of David Ureña dated April 17, 2015, Dkt. No. 115 ("Ureña Affirmation Dkt. No. 115").) Associates' General Manager Nelson Izquierdo and supervisor Androke Polonio managed Associates, with Polonio managing more of the day-to-day issues, such as setting technicians' schedules and arrival times. (Pls.' 56.1 ¶¶ 14-18, 21-23; Defs.' 56.1 ¶¶ 14-18, 21-23.) Izquierdo and Polonio also initially ran Telecom until they hired Maria Giannini to do so. (Pls.' 56.1 ¶¶ 19-20; Defs.' 56.1 ¶¶ 19-20.)

There is no dispute regarding how Associates functioned. Cablevision issued work orders to individual technicians based on a schedule of the technicians' availability that Associates had provided to Cablevision in advance. (Pls.' 56.1 ¶ 29; Defs.' 56.1 ¶ 29.) Technicians arrived at Associates' warehouse between 7:00 AM and 9:00 AM in staggered shifts. (Pls.' 56.1 ¶ 33; Defs.' 56.1 ¶ 33.) The technicians had no set end-time to their workday, but rather ended when they had completed their assigned work orders. (Dep. of Nelson Izquierdo dated Dec. 19, 2014 at 175:3-21, Ex. 1 to Affirmation of David Ureña dated March 13, 2015, Dkt. No. 132 ("Ureña Affirmation Dkt. No. 132").)

---

[1] Most plaintiffs worked for Associates, which is headquartered in the Bronx; at least two plaintiffs worked for Telecom, which was based in New Jersey until it ceased operations in 2014. (Pls.' 56.1 ¶¶ 4-7, 9-10; Defs.' 56.1 ¶¶ 4-7, 9-10.)

The parties dispute the exact length of the technicians' workdays and how many days the technicians worked. Although Polonio testified that a typical workweek was five days at eight hours per day, (Dep. of Androke Polonio dated Dec. 16, 2014 at 14:18-19, Ex. 29 to Ureña Affirmation Dkt. No. 115), several plaintiffs testified that they typically worked six or seven days per week. (*See, e.g.*, Dep. of Juan Diaz dated Nov. 21, 2014 at 40:11-12, Ex. 22 to Ureña Affirmation Dkt. No. 115; Dep. of Jorge Done dated Dec. 4, 2014 at 28:12-17, Ex. 5 to Ureña Affirmation Dkt. No. 132.) Numerous plaintiffs reported working more than 40 hours in various weeks. (*See, e.g.*, Ex. 1 to Affirmation of Felix Corporan dated March 10, 2015, Dkt. No. 120.)

In addition to spending time completing customer service orders and driving to customer residences, several plaintiffs testified that they were required to spend substantial time at Associates' warehouse both in the morning—before driving to their work assignments—and evening—after completing their customer service orders. (Pls.' 56.1 ¶ 42, 45-46; Defs.' 56.1 ¶ 42, 45-46.) In the morning, the technicians checked in, received their work orders, and retrieved necessary equipment before heading to their assignments. (Pls.' 56.1 ¶¶ 42; Defs.' 56.1 ¶¶ 42.) The parties dispute how much time was expended in these activities; it was either less than, or more than, thirty minutes. (Pls.' 56.1 ¶ 43; Defs.' 56.1 ¶ 43.) In the evening, technicians had to return old or unused equipment and complete paperwork for 20-30 minutes. (Pls.' 56.1 ¶¶ 45-46, 49, 53; Defs.' 56.1 ¶¶ 45-46, 49, 53.)

As noted above, defendants paid the technicians "a straight 'piece rate'" based on each task completed "regardless of hours worked." (Pls.' 56.1 ¶ 54-56; Defs.' 56.1 ¶ 54-56; Dep. of Maria Giannini dated March 13, 2014 at 28:3-6, Ex. 28 to Ureña Affirmation Dkt. No. 115.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if there are no genuine issues of material fact and plaintiffs are entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013); *Dauphin v. Chestnut Ridge Transp. Inc.*, 544 F. Supp. 2d 266, 270-71 (S.D.N.Y. 2008). To avoid summary judgment, defendants must set forth specific facts

showing that there are genuine issues for trial. *Irizarry*, 722 F.3d at 103 n.2. Defendants may not rely on "mere conclusory allegations or speculation," and the Court is obligated to "draw all permissible factual inferences" in defendants' favor. *Dauphin*, 544 F. Supp. 2d at 271 (citation and internal quotation marks omitted). "A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party." *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp. 2d 422, 437 (S.D.N.Y. 2009).

### B. Overtime

To establish plaintiffs' FLSA overtime claims, plaintiffs must demonstrate (1) that they are "employees"'; that defendants are "employers"; and that Associates and Telecom "engaged in commerce" as the FLSA defines those terms, and (2) that they worked in excess of 40 hours in the relevant work week. 29 U.S.C. § 207(a)(1); *see generally Irizarry*, 722 F. 3d at 103-05; *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113-14 (2d Cir. 2013).[2] Defendants do not dispute that plaintiffs have put forth enough evidence to hold defendants liable for the failure of *Associates* to pay overtime. (*See, e.g.*, Defs.' Mem. of L. in Opp'n to Plfs.' Mot. For Summ. J. as to Liability ("Defs.' Opp'n") at 5-6.) Defendants do contend, however, that plaintiffs have failed to put forth any evidence that shows that any *Telecom* technicians worked more than 40 hours per week. (Defs.' Opp'n at 5-6.)

However, there is evidence in this record that at least some of the Telecom technicians worked more than 40 hours per week. Maria Giannini, for instance, conceded that a typical workday for Telecom's technicians began around 7:30 AM or 8:00 AM and ended by 5:00 PM. (Maria Giannini Dep. at 34:4-6.) Plaintiff Jorge Done, who worked for both Telecom and Associates, testified that he worked six days a week at both companies. (Done Dep. at 22:12-16, 28:15-18.) Even assuming that Done arrived at work for the later 8:00 AM shift, a typical week for him would be 54 hours. Other evidence shows that Telecom only gave its technicians one day off. (Ex. 2 to

---

[2] The elements of plaintiffs' state overtime claims are essentially the same. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 78 (2d Cir. 2003); 12 N.Y. Comp. Codes R & Regs. tit. 12 § 142-2.2; *Thompson v. Real Estate Mortg. Network, Inc.*, 106 F. Supp. 3d 486, 490 (D.N.J. 2015); N.J. Stat. Ann. § 34:11-56a4.

Reply Affirmation of David Ureña dated May 11, 2015, Dkt. No. 116.) Numerous Telecom technicians reported that they worked more than forty hours in a given workweek. (Ex. 6 to Ureña Reply Affirmation) Any disputes defendants have with the precise arithmetic of hours for each plaintiff is for determination at trial, not on this motion.

Defendants' prime defense, however, is not that no plaintiff worked in excess of 40 hours per week. Rather, defendants argue that the FLSA exempts them from paying overtime altogether pursuant to the FLSA's "retail or service establishment" exemption, 29 U.S.C. § 207(i), which provides as follows:

> No employer shall be deemed to have violated subsection (a) of this section [requiring overtime pay] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Courts have universally subdivided this statutory mouthful into three distinct elements that defendants must satisfy in order to invoke successfully the exemption. Defendants must prove that: (1) Associates and Telecom are "retail or service establishment[s]"; (2) the technicians' "regular rate of pay exceeded one and one-half times the minimum hourly rate;" and (3) more than half of the technicians' "compensation for a representative period (not less than one month) represented commissions on goods or services." *See e.g.*, *Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005). The employer-defendants bear the burden of proving the exemption. *Id*. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012). Moreover, because the FLSA is a remedial act, the exemption is

5

to be "'narrowly construed.'" *Id.* (citation omitted); *see also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

To avoid summary judgment, defendants need only point to evidence from which a factfinder could reasonably conclude that each of the exemption's elements are satisfied. On that standard, sufficient evidence exists to support the first and third elements. First, numerous courts have found businesses that are essentially identical to defendants to be "service establishments" and plaintiffs offer no persuasive arguments as to why those courts are wrong. *See, e.g., Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 434-41 (N.D.N.Y. 2014); *Jones v. Tucker Comms., Inc.*, 11-cv-398, 2013 WL 6072966 at *5-10 (M.D. Ga. Nov. 18, 2013); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 10-cv-18, 2011 WL 4433159 at *3-7 (D. Vt. Sept. 21, 2011) (*Owopetu II*). In addition, there is evidence in this record that the technicians' "regular rate of pay" exceeded one and one half times section 206(a)'s minimum hourly rate in at least some workweeks. *See Schwind*, 371 F. Supp. 2d at 567. (Exs. B, C, and D to Affirmation of Maxwell D. Rosenthal dated April 27, 2015, Dkt. No. 109.)

However, this record lacks any evidence whatsoever that defendants' payment scheme is based on "commission"; thus, defendants have failed to sustain section 207(i)'s second element and defendants are therefore not exempt from paying overtime to the technicians. 29 U.S.C. § 207(i); *Johnson*, 4 F. Supp. 3d at 433, 441-44.

Although the FLSA fails to define "commission," courts have consistently concluded that "commission" schemes share three distinct but interrelated features:

> (1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold and the rate paid to the employee.

*Johnson*, 4 F. Supp. 3d at 442 (citation omitted). The hallmark of a commission-based system is the decoupling of payment from actual time worked. *Yi v. Sterling Collision Ctrs.*, 480 F.3d 505, 509 (7th Cir. 2007); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 10-cv-18, 2011 WL 883703

6

at *4 (D. Vt. March 11, 2011) (*Owopetu I*). Whether a given payment constitutes a "commission" is a question of law. *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001). It is a functional test and turns not on what the payment is called but rather on how that payment system works in practice. *See Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 367 (7th Cir. 2015) (citing *Yi*, 480 F.3d at 508).

Although plaintiffs contend that the record supports *none* of the abovementioned factors, there is record evidence that the technicians' compensation is tied to customer demand. (*See, e.g.*, Decl. of Nelson Izquierdo ¶ 4 dated April 27, 2015, Dkt. No. 110; Polonio Dep. at 57:7-14; Ex. 7 to Ureña Reply Affirmation.) Defendants also point to evidence that compensation was proportional to the value of services sold, which is the third factor. (*See, e.g.*, Izquierdo Dep. at 90:5-91:6.)

The crux of this case, then, is whether defendants can show that their compensation plan provided "performance-based incentives" for the technicians to increase their income. *Johnson*, 4 F. Supp. 3d at 442. Defendants contend this factor is satisfied because their system of paying technicians for each completed task incentivizes the technicians to work faster. Thus, the theory goes, a technician who receives five tasks at the start of her day is incentivized to complete those tasks as quickly as possible in order to be available to be assigned additional tasks and thereby earn more money. *See id*. Izquierdo articulated this theory explicitly when he testified that technicians "were paid on a piece rate basis in order to incentivize them to work more efficiently." (Defs.' Opp'n at 9; Defs.' 56.1 ¶ 91; Izquierdo Decl. ¶ 5.) Unfortunately for defendants, however, there is no evidence whatsoever in the record that that is how the system actually worked. *Johnson*, 4 F. Supp. 3d at 442-43.

Instead, undisputed facts show that no technician received additional payment as a reward for completing her work more efficiently. Work assignments were not assigned based on a technician's speed or efficiency. Cablevision assigned work in advance based on the specific hours that a technician was available each day. (Izquierdo Dep. at 34:2-10; Polonio Dep. at 54:22-55:2; Pls.' 56.1 ¶¶ 29-31; Defs.' 56.1 ¶ 29-31.) The more hours that a technician agreed in advance to work, the more tasks she would be assigned.

Even when Associates had extra work to dole out, that extra work was not given as a reward for speed or efficiency. (*See, e.g.*, Polonio Dep. at 56:18-57:3; Izquierdo Dep. at 58:4-59:7, 174:3-16.) There were times, for instance, when Cablevision had more service orders than available technicians could handle. (Izquierdo Dep. at 58:4-59:7, 174:3-10; Polonio Dep. at 56:18-57:3.) To fulfill these orders, Izquierdo would either ask technicians to work extra days or would hire extra technicians. (Izquierdo Dep. at 58:4-59:7, 174:3-10.) Polonio did the same: He would ask available technicians to "start earlier" or would ask technicians if "they want to work" on their off days. (Polonio Dep. at 56:23-57:3.) Once again, the more hours a technician agreed to work, the more tasks he or she would be assigned and the more money that technician made. Defendants' system thus did not decouple hours worked from wages earned. *See Owopetu I*, 2011 WL 883703 at *4.

Defendants' failure to provide any evidence of the relevant performance-based incentives is stark when juxtaposed with evidence presented in similar but distinguishable cases. In *Moore v. Advanced Cable Contractors, Inc.*, No. 12-cv-115, 2013 WL 3991966 (N.D. Ga. Aug. 1, 2013), for instance, the technician-plaintiffs' "own deposition testimony state[d] that there were ample opportunities for technicians to get additional work if they completed their scheduled appointments ahead of time." *Id.* at *5. Technicians were even "paid extra if they sold customers upgraded service packages or hardware not on their scheduled work-orders." *Id.* The same was true in *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423 (N.D.N.Y. 2014), where the technicians could "contact Wave Comm and request additional work orders" when they finished their normal work assignments, thereby earning more money. *Id.* at 443. Here, there is no analogous evidence that plaintiffs "had the opportunity to earn additional income by working faster and completing more tasks," *id.* at 443, or that technicians had the "opportunity to pick up additional jobs during the day." *Jones*, 2013 WL 6072966 at *10. *See also Matrai v. DirecTV, LLC*, 14-cv-2022, 2016 WL 845257 at *14 (D. Kan. March 4, 2016).

It is true that some cases "have found commissions to exist based upon an employee's incentive merely to work faster." *Owopetu I*, 2011 WL 883703 at *4 (citing *Klinedinst*, 260 F.3d at 1256). However, to the extent that those cases stand for the proposition that an employer can satisfy section 207(i)'s commission requirement when a compensation scheme incentivizes

8

employees to work faster alone without any actual increased pay as a result, the Court finds those cases unpersuasive. *See Ramos*, 687 F.3d at 558 (FLSA exemptions must be construed narrowly). It is not enough that the payment scheme enables efficient employees to leave work earlier than less efficient employees. A true commission system must instead "provide performance-based incentives for the employee *to increase his or her income*." *Johnson*, 4 F. Supp. 3d at 442 (emphasis added). There is no evidence whatsoever in this record to support such a conclusion. Accordingly, the Court concludes that defendants are not exempt as retail and service establishments from having to pay overtime.

### C. Minimum Wage & Gap Time

Plaintiffs also claim that they are entitled to summary judgment on the grounds that defendants failed to pay minimum wage for the morning time the technicians spent in the warehouse as well as the evening time spent there. The morning time was spent checking in, receiving work orders, and gathering necessary equipment before driving to a customer's residence; the evening time was spent returning equipment and filling out paperwork after the technician completed her last work order. This Court must therefore address whether the morning wait time and evening return time are compensable at all. *See* 29 U.S.C. § 254(a)(2).

The U.S. Supreme Court recently addressed that very issue in *Integrity Staffing Solutions v. Busk*, 135 S. Ct. 513 (2014). In *Busk*, the plaintiffs worked in one of Amazon's shipping warehouses "retriev[ing] products from warehouse shelves and packag[ing] those products for shipment to Amazon customers. *Id.* at 518. They were forced at the end of each workday to spend significant time undergoing "antitheft security screening" before they could leave work. *Id.* at 515. They sought compensation for the time spent in that screening.

The U.S. Supreme Court rejected their claim, however, holding that time is compensable under the FLSA only if the activity at issue "is integral and indispensable to the principal activities that an employee is employed to perform"; that is, "one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 517. Employees are not entitled to compensation for any "activities which are preliminary to or postliminary to" an employee's "principal activities." 29 U.S.C. § 254(a). Because the

9

security screenings were neither a "principal activity" nor "integral and indispensable" to retrieving and packaging products, the screenings had no impact on whether or how adeptly the warehouse employees could do their job of retrieving and packaging products. *Id.* at 518.

Here, plaintiffs argue that two different time periods are compensable: the morning wait time and the evening return time. Defendants concede that the morning time is compensable, and the Court agrees. It is undisputed that the technicians would not be able to service Cablevision customers without picking up necessary equipment and obtaining work orders each morning.

The time that plaintiffs spend in the evening returning equipment and completing paperwork is different. Plaintiffs are employed to install, maintain, and upgrade cable systems for Cablevision customers, (Pls.' 56.1 ¶ 2; Defs.' 56.1 ¶ 2), not to return equipment to a warehouse or to fill out paperwork. The tasks completed during the evening return time are thus not principal activities. *Busk*, 135 S. Ct. at 517. Similarly, those tasks are not "integral and indispensable" to any principal activity. Simply put, dispensing with the evening return time would not hamper the technicians' ability to efficiently and effectively service Cablevision's customers. Any arguments to the contrary were rejected in *Busk*. It is irrelevant that Associates and Telecom required the evening return time; that they could have shortened the duration of that time; and that the time primarily benefited the employer. *Id.* at 519. The evening return time is postliminary, not "integral and indispensable," and thus not compensable.

Still, this court's determination—and the parties' agreement—that the technicians' morning wait time is compensable does not necessarily entitle plaintiffs to any additional FLSA damages, because the FLSA mandates only that an employee is paid an average minimum wage. *See Lundy*, 711 F.3d at 116. Consequently, plaintiffs will only be entitled to damages pursuant to the FLSA if their pay divided by the number of hours worked— including morning wait time—is less than the minimum hourly wage. That determination must await the trial of this action.

New Jersey and New York labor laws, however, ultimately may be more helpful to plaintiffs in this regard than the FLSA. Unlike the FLSA, those state laws allow "gap time claims" in which an employee seeks to be

paid her regular hourly rate for previously uncompensated time. *See Lundy*, 711 F.3d at 118; *Gregory v. Stewart's Shops Corp.*, 14-cv-33, 2015 WL 893058 *4 (N.D.N.Y. March 2, 2015); *Merlo v. Fed. Express Corp.*, 2010 WL 2326577 at *8 (D.N.J. May 7 2010) (citing N.J. Admin Code § 12-56-5.1). Gap time claims can be brought pursuant to state law even if an employee's average hourly pay is greater than the minimum wage.

As with the FLSA minimum wage claims, the amount of damages to which plaintiffs are entitled, if any, awaits trial. There is evidence in this record that plaintiffs are entitled to nothing on their gap time claims because plaintiffs may have received all the compensation for which they bargained. (*See* Izquierdo Dep. at 127:13-129:2.) Plaintiffs provide substantial evidence to the contrary. (*See e.g.*, Dep. of Cesar Almanzar dated Nov. 18, 2014 at 76:6-16, Ex. 18 to Ureña Affirmation Dkt. No. 115.) These issues of material fact prevent the Court from granting judgment to plaintiffs on their state gap time claims.

### D. New York Labor Law Violations

Plaintiffs also seek summary judgment that Associates and its managers are liable for three violations of the New York Labor Law. The first claimed violation, supported by testimonial evidence, is that Associates unlawfully deducted the value of lost or damaged equipment from the technicians' wages. (*See* Affirmation of Juan Ogando ¶¶ 1-2, Dkt. No. 128; *See also* Dep. Of Juan de la Cruz dated Nov. 18, 2014 at 41:11-15, Ex. 16 to Ureña Affirmation Dkt. No. 115.) The New York Labor Law does not permit any such deductions. *See* NYLL § 193(1)(a)-(b); *Karic v. Major Automotive Companies, Inc.*, 992 F. Supp. 2d 196, 202 (E.D.N.Y. 2014). Defendants are liable for any deductions from technicians' wages for lost or damaged equipment.

As to the final two violations, defendants fail to argue they in fact complied with the relevant provisions of New York Labor Law. First, defendants do not dispute that they violated New York Labor Law § 193(1)(d) by failing to institute a written grievance policy for employees to dispute funds deducted as payroll loan repayments. (*See* Pls.' 56.1 ¶¶ 66-67; Defs.' 56.1 ¶¶ 66-67.) Second, defendants do not dispute that they violated New York Labor Law § 195(1) by failing to provide required wage notices at the time the technicians were hired. *See Perez v. Platinum Plaza 400*

11

*Cleaners, Inc.*, 12-cv-9353, 2015 WL 1881080 at *4 (S.D.N.Y. April 24, 2015). The technicians are thus entitled to summary judgment that defendants are liable for violations of these three New York Labor Law claims.[3]

### E.  Defendants' Mens Rea

Finally, plaintiffs seek summary judgment on the issue of defendants' mens rea. If an employer "willfully" violated the FLSA, that employer is liable for three—not two—years of violations. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 936 (S.D.N.Y. 2013); 29 U.S.C. § 255(a). "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the act." *Keubel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (internal quotation marks omitted). Moreover, the FLSA and New York Labor Law both provide that an employer must pay its employee liquidated damages for violations unless the employer acted in "good faith." 29 U.S.C. § 260; NYLL § 198(1-a).[4] This is no minor concern: a majority of courts in this Circuit have concluded that an employee may recover liquidated damages pursuant to *both* the FLSA and NYLL. *See, e.g.*, *Ho v. Sim Enters. Inc.*, 11-cv-2855, 2014 WL 1998237 at *18 (S.D.N.Y. March 26, 2015). Any finding that an employer "willfully" violated the FLSA or acted without "good faith" has the potential to deal an expensive blow to the employer.

---

[3] Defendants contend in a footnote that plaintiffs' New York Labor Law claims cannot be raised by any of the opt-in plaintiffs because this case is only brought as a collective action pursuant to the FLSA and not as a class action pursuant to Fed. R. Civ. P. 23. Defendants are mistaken. Individuals who have opted-in to an FLSA collective action have "party status" and are able to advance their own claims. 7B Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 1807 (3d ed. 2011); *Byron v. Genovese Drug Stores, Inc.*, 10-cv-3313, 2011 WL 4962499 at *2 (E.D.N.Y. Oct. 14, 2011); *see* 29 U.S.C. § 216(b). Thus, the opt-in plaintiffs in this conditionally certified collective FLSA action are entitled to assert the same New York Labor Law claims that the original plaintiffs have asserted.

[4] The liquidated damages standard is different for violations of New York Labor Law that occurred prior to 2009. For violations prior to 2009, a 25 percent award of liquidated damages is available if plaintiffs show that defendants acted "willfully."  *Hart*, 967 F. Supp. 2d at 937-38 (citing NYLL § 198(1-a)).

Plaintiffs point to three facts that, they say, establish that defendants acted willfully and without good faith. First, they note that defendants were on notice of the wage violations from two prior suits technicians brought against them and a New Jersey Department of Labor investigation that resulted in Telecom paying New Jersey a fine. (Pls.' 56.1 ¶¶ 72-75; Defs.' 56.1 ¶¶ 72-75.) Second, they contend that defendants erased timeclock records and improperly recorded the technicians' hours. (Plfs.' 56.1 ¶ 41; Defs.' 56.1 ¶ 41.) Third, they contend that defendants ignored their attorneys' proposals to change the technicians' compensation system to ensure its legality.

Although a reasonable factfinder could infer bad faith or willfulness from these facts, defendants have presented additional facts that support more benign inferences. Regarding the lawsuits, each case settled early in the litigation, and Associates never admitted liability. (Defs.' 56.1 ¶ 103.) As in this case, Associates there asserted that the retail or service establishment exemption applied. 29 U.S.C. § 207(i); (Defs.' 56.1 ¶ 103.) Defendants' claim to the exemption is by no means frivolous, and other courts have found similar—though distinguishable, *see* Part II-B, *supra*—claims meritorious. *Cf. Hart*, 967 F. Supp. at 938. Similarly, although Izquierdo did testify that his timeclock erased records, he also testified that the timeclock's erasures resulted from his failure to properly read the instructions. (Pls.' 56.1 ¶ 41.) The timeclock erasures—as well as defendants' failure to maintain accurate records of the technicians' hours—do not necessitate a finding of "willfulness" or "bad faith." These facts are also consistent with merely finding defendants negligent. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).

Plaintiffs' last argument—that defendants willfully ignored their attorneys' advice to change the compensation scheme—is similarly unavailing at this stage of the litigation. Evidence suggests that defendants did, in fact, change their pay structure to ensure that it would qualify as a "commission" under the retail or service establishment exemption. (Izquierdo Dep. 93:9-23.) That this change did not suffice, *see* Part II-B, *supra*, does not require a finding that defendants acted in bad faith or willfully violated the FLSA.

In sum, defendants have presented a sufficient counter-narrative to forestall summary judgment on the issues of willfulness and bad faith.

### III. CONCLUSION

The Court grants in part and denies in part plaintiffs' motion for summary judgment as follows: (1) summary judgment is granted to plaintiffs on their claim that defendants are liable for any week they failed to pay appropriate overtime because plaintiffs are not exempt as retail or service establishments from having to pay overtime; (2) summary judgment is denied as to plaintiffs' minimum wage claims (although all parties and the Court agree that the morning wait time is compensable) and state law gap time claims; (3) summary judgment is granted to plaintiffs on the ground that defendants are liable for any violations that may be proven at trial of NYLL § 193(1)(a)-(b) (lost or damaged equipment deductions), § 193(d) (written payroll loan repayment grievance policy), and § 195(1) (wage notices at hiring); and (4) summary judgment is denied to plaintiffs on the issue of defendants' mens rea.

Dated: New York, New York
March 31, 2016

SO ORDERED:

Sidney H. Stein, U.S.D.J.